MITCHELL (KIKINDAL v.). See Case No. 7,763.

MITCHELL (KIRKENDALL v.). See Case No. 7,841.

## Case No. 9,665.
### MITCHELL v. LIPPINCOTT et al.

[2 Woods, 467; 1 Cent. Law J. 265.] [1]

Circuit Court, S. D. Alabama. April Term, 1874. [2]

HUSBAND AND WIFE—ALABAMA ACT—SEPARATE ESTATE — POWER TO MORTGAGE FOR HUSBAND'S DEBT—STATE ADJUDICATIONS.

1. Under the "married woman's law" of Alabama, as now construed, a married woman can

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission. 1 Cent. Law J. 265, contains only a partial report.]

[2] [Affirmed in 94 U. S. 767.]

in no case mortgage her separate estate, however acquired or held, for her husband's debts.

2. A married woman executed a mortgage on her separate estate to secure her husband's debt at a time when, according to the decisions of the supreme court of the state, such a mortgage was valid. By subsequent decisions of the same court, such a mortgage was declared invalid. *Held,* in a proceeding to enforce the mortgage, that the federal court was bound by the later adjudications of the state supreme court.

[Cited in Kimball v. Mobile, Case No. 7,774.]

In equity. This cause [against Lippincott & Co.] was heard for final decree upon the pleadings and an agreed statement of facts.

A. R. Manning and Percy Walker, for complainant.

T. N. McCartney and M. E. McCartney, for defendants.

WOODS, Circuit Judge. On the 19th of March, 1866, there was conveyed to the complainant, who was a feme covert, by a deed of that date, certain real estate in the city of Mobile. The deed in the granting clause purported to convey the premises to the said Nannie C. Mitchell, her heirs and assigns forever. The habendum et tenendum clause was as follows: "To have and to hold the above granted and bargained premises unto the said Nannie C. Mitchell, her heirs and assigns, to the sole and proper use, benefit and behoof of the said Nannie C. Mitchell, her heirs and assigns forever." On the 17th of February, 1869, the complainant jointly with her husband, executed a mortgage on this property to the defendants. The mortgage was not to secure any debt of the complainant, but was to secure one for which her husband expected to become liable. The mortgage contained a power of sale, and the debt secured thereby not having been paid in full, the defendants advertised the premises for sale. This bill was filed for a perpetual injunction to restrain the defendants from selling the property under the mortgage. The claim of the bill is that the premises were the separate property of the complainant as a married woman, and that under the laws and jurisprudence of this state, she could not incumber her separate estate for her husband's debts, and that her mortgage for that purpose is absolutely void.

The "married woman's law," as it is called, was passed in 1850, and is found in the Revised Code (section 2371 et seq.). Section 2371 declares that "all property of the wife held by her previous to the marriage, or which she may become entitled to after the marriage, in any manner, is the separate estate of the wife, and is not subject to the payment of the debts of the husband." The complainant claims that under this provision of the law, as now construed by the supreme court of the state, the mortgage upon her property was absolutely void for want of power in her to incumber it for the debt of her husband.

The defendants claim that under the de-cision of the supreme court of the state, construing the "married woman's law," the estate a feme covert might acquire, as at common law, was not interfered with by this act. So that after the passage of this act, a married woman in this state might hold two kinds of separate estate, each governed by different laws. One was called her separate estate under contract or deed, and the other her separate estate under statute, or statutory separate estate; that the distinction was, that if she held by a deed which used words of such significance as to exclude the marital rights of the husband, the deed itself gave her a separate estate, and the rules of the common law governing such an estate applied; but if the conveyance under which she held used no such words, or the estate came to her by descent, then she held it as separate estate under the Code, and the rules of law governing such an estate were laid down by the Code; that when the estate was a separate estate by deed or contract the wife might, as at common law, incumber it for her husband's debts, by mortgage properly executed. The defendants claim that this construction of the law was maintained by the supreme court of the state until after the execution of the mortgage to them by complainant; that under the law as so construed, her estate was a separate estate by deed, and she might well incumber it for her husband's debts. They cite Cowles v. Morgan, 34 Ala. 535; Paulk v. Wolfe. Id. 541; Gunter v. Williams, 40 Ala. 561; Nun v. Givhan, 45 Ala. 375. It is however conceded by the defendants, that since the date of this mortgage the supreme court of the state has adopted a different construction of section 2371 of the Revised Code, and that they now hold that there is no distinction between the two sorts of separate estates; that both are governed by the Code, and that in no case can a married woman mortgage her separate estate, however acquired or held, for her husband's debts. But the defendants insist that this court is not bound to follow these later adjudications, but should adhere to the law as construed by the court at the time the contract was made. In my judgment, this claim of the defendants is not well founded.

The mortgage to the defendants, as above stated, bears date the 19th of February, 1869. In January, 1869, the supreme court of the state decided the case of Bibb v. Pope, reported in 43 Ala. 190. In that case it appeared that on August 10, 1860, there was conveyed to Mrs. Evelyn Pope, who was then intermarried with Augustus Pope, the premises in controversy "to have and to hold the same to her, her heirs and assigns, to her use and behoof forever." On the 6th of April, 1866, Pope, the husband, borrowed $10,000 of the plaintiff Bibb, for which he gave his bill of exchange, and he and his wife executed to Bibb a mortgage, with power of sale on the premises, to secure the

payment of the same. Pope failed to pay the bill at maturity and Bibb advertised the property for sale. Thereupon Mrs. Pope, by her next friend, filed her bill for a perpetual injunction to restrain the sale, claiming that the mortgage was void. I have been thus particular in the statement of this case that it may appear how nearly it resembles in its facts the case at bar.

In deciding the case, the court said:. "The only question discussed at the bar was whether Mrs. Pope was bound by said mortgage, and whether her statutory separate estate was liable to be sold under it to pay her husband's debts. This question has not heretofore been settled by any decision of this court." .The court then decides that if the sale of the separate estate of the wife to pay the husband's debts was permitted, the whole purpose of the law, so far as it protects the wife's separate estate, would be defeated, and that the wife had no power to mortgage her separate estate for her husband's debts. Conceding that the decision of the supreme court of the state had been as claimed by defendants up to the case of Bibb v. Pope, it is clear that the rule was broken over by this case and a different one adopted. And this decision was made before the date of the mortgage. The ruling in this case has since been adhered to by the court. Cowles v. Marks, 47 Ala. 620; Ellett v. Wade, Id. 464; Denechaud v. Berry, 48 Ala. 591. But suppose, as claimed by the defendants, the rulings had been, as stated by them, until after the delivery of the mortgage and the construction of the law had then been changed, which construction ought this court to follow? The defendants say that we are bound to enforce the law according to the construction given it at the date of the mortgage. In support of. this position, they cite the case of Gelpcke v. Dubuque, 1 Wall. [68 U. S.] 206, in which the supreme court of the United States says: "The sound and true rule is, that if the contract when made was valid, by the laws of the state, as then expounded by all departments of the government and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent action of the legislature or decision of its courts altering the construction of the law." Also Havemeyer v. Iowa City, 3 Wall. [70 U. S.] 303; Olcott v. Supervisors, 16 Wall. [83 U. S.] 678; Ohio Life Ins. Co. v. Debolt, 16 How. [57 U. S.] 432.

It is to be observed that the case of 16 How. was the case of a contract made by the state, and the court held that the rules of interpretation which required the federal to follow the state courts in the construction of the laws of the state "were confined to ordinary acts of legislation, and did not extend to the contracts of the state, although they should be made in the form of law." The cases in 3 Wall. [70 U. S.] and 16 Wall. [83 U. S.] concerned the interpretation of laws

upon which the validity of bonds issued by municipal and political corporations depended. On the other hand, in the case of Suydam v. Williamson, 24 How. [65 U. S.] 427, the supreme court of the United States held that when any principle of law establishing a rule of real property has been settled in the state courts, the same rule will be applied by the supreme court that would be applied by the state tribunals. In this case the supreme court, following a change in the decisions of the supreme court of New York, reversed its own decision in Williamson v. Berry, 8 How. [49 U. S.] 495, "although property had been bought and sold upon the faith of the opinion there delivered and the judgment pronounced by this court." So in the earlier case of Jackson v. Chew, 12 Wheat. [25 U. S.] 162, the court said: "The inquiry is very much narrowed by applying the rule which has uniformly governed this court, that when any principle of law establishing a rule of real property has been settled in the state courts, the same rule will be applied by this court as by the state tribunals." So also in Beauregard v. New Orleans, 18 How. [59 U. S.] 497, the court says: "The constitution of this court requires it to follow the laws of the several states whenever they properly apply, and the habit of the court has been to defer to the decisions of their judicial tribunals upon questions arising out of the common law of the state, especially when applied to the title to. lands. Upon cases like the present, the relation of courts of the United States to a state is the same as that of her own tribunals. They administer the laws of the state, and to fulfil that duty, they must find them as they exist in the habits of the people and in the exposition of their constituted authorities. Without this, the peculiar organization of the judicial tribunals of the states and the Union would be productive of the greatest mischiefs and confusion." In League v. Egery, 24 How. [65 U. S.] 264, the supreme court of the United States reversed its own decision, made in Arguello v. U. S., 18 How. [59 U. S.] 539, to the effect that the colonization regulations of Mexico of 1824 and 1828 did not prohibit the settlement of the littoral or coast leagues by natives under the authority of the governor of California and without the consent of the central government of Mexico. This was done without re-examining that opinion or making any attempt to account for or reconcile the differences, because the supreme court had found that a contrary opinion had prevailed in the courts of Texas, and had become a rule of property there. That the decisions of the state courts touching the title to lands are to be treated as binding authorities in the courts of the United States is held in the following cases: Polk v. Wendal, 9 Cranch [13 U. S.] 87; Rundle v. Delaware Canal Co., 14 How. [55 U. S.] 93; Thatcher v. Powell, 6 Wheat. [19 U. S.] 119; Elmendorf v. Taylor,

10 Wheat. [23 U. S.] 152; Ross v. Barland, 1 Pet. [26 U. S.] 655; McKeen v. Delancy, 5 Cranch [9 U. S.] 22. The settled construction of a state statute is considered as a part of the statute. Massingill v. Downs, 7 How. [48 U. S.] 767; Nesmith v. Sheldon, Id. 812; Van Renssalear v. Kearney, 11 How. [52 U. S.] 297; Webster v. Cooper, 14 How. [55 U. S.] 504; Green v. James [Case No. 5,766]; Woolsey v. Dodge [Id. 18,032]; Thompson v. Phillips [Id. 13,974]. In construing the statutes of a state, infinite mischief would ensue should the federal courts observe a different rule from that which has been long established in a state. McKeen v. Delancy, supra. In cases depending upon the statutes of a state, and more especially those respecting the titles to land, the federal courts observe the construction of the state, when that construction is settled or can be ascertained. Polk v. Wendal, supra. The supreme court uniformly acts under a desire to conform its decisions to the state courts upon local laws forming rules of property. Mutual Assur. Soc. v. Watts, 1 Wheat. [14 U. S.] 279. The supreme court holds in the highest respect decisions of state courts upon local laws forming rules of property. Shipp v. Miller, 2 Wheat. [15 U. S.] 316. When the construction of the statute of the state relates to real property, and has been settled by any judicial decision of the state where the land lies, the supreme court, upon the principles uniformly adopted by it, will recognize the decision as a part of the local law. Gardner v. Collins, 2 Pet. [27 U. S.] 58. In construing local statutes respecting real property, the courts of the Union are governed by the decisions of state tribunals. Thatcher v. Powell, 6 Wheat. [19 U. S.] 119. The construction given to a statute of a state by the highest judicial tribunal of such state is regarded as a part of the statute, and is as binding upon the courts of the United States as the text. Leffingwell v. Warren, 2 Black [67 U. S.] 603, and cases there cited. If the highest judicial tribunal of a state adopt new views as to the proper construction of such a statute, and reverse its former decisions, the federal courts will follow the latest settled adjudication. U. S. v. Morrison, 4 Pet. [29 U. S.] 124; Green v. Neil's Lessee, 6 Pet. [31 U. S.] 291; Leffingwell v. Warren, supra.

The question whether a mortgage of real estate is valid or not is certainly a question touching real property. The case at bar, therefore, falls within the decisions cited. The rule, established by the earlier decisions of the supreme court, is recognized in the case of Olcott v. Supervisors, 16 Wall. [83 U. S.] 678, cited by the defendants, in which Mr. Justice Strong, delivering the opinion of the court, says: "It is undoubtedly true, in general, that this court does follow the decisions of the highest courts of the states respecting local questions peculiar to themselves, or respecting the construction of their own constitution and laws. But it must be kept in mind that it is only decisions upon local questions, those which are peculiar to the several states, or adjudications upon the meaning of the constitution or statutes of a state which the federal courts adopt as rules for their judgments." Do not the adjudications of the supreme court of Alabama, construing the statute of the state regulating the rights of married women and the validity of mortgages executed by them upon their real estate, fall within the class of cases mentioned by Judge Strong, where the federal courts are bound to follow the state decisions? If the rule is ever to be applied to any case, it seems to me the construction of the "married woman's law" is a proper case for its application. The conclusion must therefore be that the mortgage of the complainant was void and the defendants ought to be restrained from proceeding under it to subject the mortgaged premises to sale. Decree accordingly.

[The respondents appealed to the supreme court, where the decree of the circuit court was affirmed: Mr. Justice Strong dissenting. 94 U. S. 767.]