JAMES A. SMITH AND OTHERS *vs.* WILLIAM C. WILLIAMS AND WIFE.

*W* and his wife executed four notes to one of his creditors on account of his indebtedness, each note containing the following clause: "each intending hereby to charge our individual estate for the payment of this note." The wife at the time owned valuable real estate, in her own right, but not to her sole use. The husband was insolvent. Upon a bill in equity for the appropriation of what was necessary of the wife's property to the payment of the notes, it was held that the notes, not being given "for the benefit of herself, her family, or her estate," were not binding upon her or her estate, under the acts of 1869 and 1872, (Gen. Statutes, p. 417, sec. 9,) nor upon any equitable principles.

The decision in *Donovan's Appeal from Probate,* 41 Conn., 551, explained.

BILL IN EQUITY, for an appropriation of certain real estate belonging to the respondent wife to the payment of certain notes executed by her; brought to the Superior Court in Hartford County. The following facts were found by the court:

The respondents are, and were at the time of the giving of the notes in question, husband and wife. On the 10th of December, 1873, William C. Williams, the husband, was indebted to the petitioners for merchandise sold to the amount of more than $10,000, and was insolvent. Geraldine V. C. Williams, the wife, at that time owned in her own right, but not to her sole use, certain valuable real estate in the town of New Britain in Hartford County where they resided, and on that day, at the request of the petitioners

and of her husband, she joined with him in executing to the petitioners four notes of $1,200 each. The notes were on one, two, three, and four months' time respectively. The debt from Mr. Williams to the petitioners was at the time overdue and unpaid; the notes were given on account of it, and the petitioners on receiving them and in consideration of them agreed to give Mr. Williams the time on his original debt that was stated in the notes. The notes were all in the following form, differing only in the time of payment:

"New Britain, Dec. 10th, 1873.

"One month after date, we jointly and severally promise to pay Smith, Northam & Robinson, or order, twelve hundred dollars, value received, each intending hereby to charge our individual property and estate for the payment of this note, payable at the Mercantile National Bank, at Hartford.

W. C. WILLIAMS,
G. V. S. WILLIAMS."

Upon these facts the case was reserved for the advice of this court.

*C. E. Perkins* and *E. Hall*, for the petitioners.

1. It has long been the settled doctrine in this country and in England, that the estate of a married woman settled on her for her separate use, without any control over it on the part of her husband, could be affected by her contracts. A court of equity has always enforced such contracts whenever in entering into the same it has clearly appeared that she intended to affect thereby her separate estate. The *intention* was the controlling fact, and equity seized it as the pivotal point in every case where it was sought to charge her separate estate. *Willard* v. *Eastham*, 15 Gray, 330, and the English cases there cited; *Yale* v. *Dederer*, 18 N. York, 281. Such intention might be *expressed* or *implied.* *Yale* v. *Dederer*, supra. *Expressed*, when incorporated in her contract or agreement. *Implied*, when entered into for carrying on her trade or business; when relating to, or made for the benefit of, her separate estate; or when the circumstances of any case are such as to show an intent to charge her separate

estate. *Butler* v. *Buckingham*, 5 Day, 497; *Imlay* v. *Hunt-ington*, 20 Conn., 146; *Jacques* v. *Methodist Episcopal Church*, 17 Johns., 548; *Yale* v. *Dederer*, supra; *Manhattan Brass Co.* v. *Thompson*, 58 N. York, 82; *Parks* v. *White*, 11 Vesey, 209; Schouler's Dom. Rel., 225; 2 Story Eq. Jur., § 1399. Had the property in question been the sole and separate estate of Mrs. Williams, it would not be claimed that she had not charged it with the payment of this note.

2. The right of married women to make contracts charging in equity their property, is no longer limited to such property as they hold to their sole and separate use, as under the old rule. In equity, there is now no difference between the separate estate of a wife created by operation of recent statutes and a similar estate created by deed to her sole and separate use. *Donovan's Appeal from Probate*, 41 Conn., 551; *Hitchcock* v. *Kiely*, id., 611; *Yale* v. *Dederer*, 18 N. York, 279; *White* v. *Waite*, 47 Verm., 502; Cord on Rights of Married Women, § 333. In *Donovan's Appeal from Probate* this court held that the real estate of a married woman could be charged in equity upon her contract, when entered into for the benefit of her estate. The court must have reached that result without any other evidence of her intent to charge her estate than that it was for its benefit. There was no writing, or other evidence, showing her intent. From the sole fact that it was for the benefit of her estate the court inferred that it must have been her intention to create a charge upon her estate. See also *Wells* v. *Thorman*, 37 Conn., 319. But in the case at bar, the intention to charge her estate is established beyond question, by the very language of her contract. *A fortiori* equity must hold the obligation of Mrs. Williams, expressed in her note, as a charge upon her estate, and her property liable for its payment. *Wells* v. *Thorman*, supra; *Buckingham* v. *Moss*, 40 Conn., 462; *Heburn* v. *Warner*, 112 Mass., 276; *Hall* v. *Eccleston*, 37 Maryl., 510; Cord on Rights of Married Women, § 276; 1 Bishop on Married Women, §§ 876, 878, note.

3. A married woman can charge her real estate with her contract and agreement, notwithstanding the life estate of

Smith *v.* Williams.

the husband in the same. *Donovan's Appeal from Probate, Imlay* v. *Huntington, Buckingham* v. *Moss,* and *Heburn* v. *Warner,* above cited. The husband, in this case, consented to her charging her estate as claimed, by joining her in the note and mortgage. It was, in fact, done by his asking and for his benefit. The interest of the husband in this land stands charged also in equity for the payment of this debt. He stands exactly in the position of a married woman, in that each have property which is not at law liable to be seized for their debts. If the estate of one can in equity be charged, for the same reason the estate of the other should be. A statutory exemption from execution can be waived. *Hewes* v. *Parkman,* 20 Pick., 95. Unless this effect is given to the agreement of the husband it amounts to nothing, and it will not be assumed that it means merely that the plaintiff could sue him and attach property which was liable before to execution. Under the statute the husband is simply trustee for the wife of this interest. *Hayt* v. *Parks,* 39 Conn., 361. She could bind her property in the hands of a trustee. *Taylor* v. *Shelton,* 30 Conn., 127.

*R. D. Hubbard* and *C. E. Mitchell,* for the respondent Mrs. Williams.

1. The petitioners are not entitled to a decree because the estate sought to be charged is not separate estate, either equitable or statutory. Not equitable, because, being acquired by deed, no words are used which show an intent to deflect the title from the course of the common law. *Plumb* v. *Ives,* 39 Conn., 120; *Hayt* v. *Parks,* id., 357; 1 Bishop's Married Women, § 826. Not statutory, because no facts are found bringing it within any enactment creating separate statutory estate; the burden of proof being on the petitioner. *Commonwealth* v. *Williams,* 7 Gray, 337; *Gregory* v. *Pierce,* 4 Met., 478; *Tracy* v. *Keith,* 11 Allen, 214. The language of the notes shows that both parties understood themselves to be contracting with reference to common law estate.

2. Even the separate statutory estate of a married woman will not be bound in law or equity by a contract securing the

debt of another, where no consideration moves to her, and effect can be given to the terms of the statute without going to such an extreme. *De Vries* v. *Conklin*, 22 Mich., 255; *Perkins* v. *Elliott*, 22 N. Jersey Eq. R., 127; *S. C.*, 23 id., 526; *Schmidt* v. *Postel*, 63 Ill., 58; *Emory* v. *Lord*, 26 Mich., 431. Hence authorities from New York and other states where statutes distinctly declare that all property, real and personal, shall vest in a married woman to her sole and separate use "*in the same manner and with the like effect as if she were unmarried*," "and that she may enter into any contract in reference to the same," are wholly inapplicable. The New Jersey court, speaking of contracts of suretyship by the wife, says, in *Perkins* v. *Elliott*, above cited, "Such obligations have nothing to do with the separate estate of the *feme*. The right to create them is a *personal right*, unconnected with the ownership of goods or lands, and not embraced in the fullest exercise of the *jus disponendi*. Such obligations are not in any sense necessary, or even convenient, to the enjoyment of her property by the married woman. The true doctrine seems to me this: that to the extent that a *feme sole* does any act which enables her to use or enjoy her separate estate, the principles of equity will validate such act, but beyond this limit she is not discovert, and cannot bind herself or her possessions." "The statute" (said Judge Cooley in *De Vries* v. *Conklin*, above cited,) "neither in terms authorizes a married woman to make herself liable personally for the debt of another, nor where no consideration moves to her can it be presumptively for her benefit. It was no part of the design of the statute to relieve her of common law disabilities for any such purposes. Her disabilities are removed only so far as they operated unjustly and oppressively; beyond that they are suffered to remain. Having been removed with the beneficent design to protect the wife in the enjoyment and disposal of her property *for the benefit of herself and her family*, the statute cannot be extended by construction to cases not embraced by its language nor within its design."

3. The real property sought to be charged, being a married woman's common law estate, not held to her sole and separate

use, could not be bound except for debts contracted for the benefit of herself, her family or her estate. *Jennings* v. *Davis*, 31 Conn., 134; *Buckingham* v. *Moss*, *Hitchcock* v. *Kiely*, and *Donovan's Appeal from Probate*, cited above. "It was not," (says the court in the last case, speaking of the act of 1872,) "the intention of the legislature to prohibit a contract which was in substance what the statute contemplated, merely because some formality required was omitted. The statute was designed chiefly to give an additional and more simple remedy, and not to *limit or enlarge* the power of a married woman over her property." If it were a new question, the conclusion, as a question under our statutes, would be the same; for, (1) the legislature, in providing for the greater beneficial enjoyment by a married woman of her property, must have intended that she should have power to bind it for her benefit, and that of her family and estate; but, (2) by withholding the complete *jus disponendi* (while conferring it in exceptional cases, as where the estate is derived from earnings,) and by withholding the contracting power, except for beneficial purposes, it evinced an intention to limit her power to charge her common law property to her beneficial contracts. Schouler reaches the same conclusion, speaking of the law of Connecticut. Schouler's Dom. Rel., 210. And this result gives symmetry to our law, because in Connecticut a married woman can neither convey, nor contract to convey, her real estate, nor can she covenant with reference to it. Gen. Stat., 353, sec. 10; *Watrous* v. *Chalker*, 7 Conn., 228; *Annan* v. *Merritt*, 13 id., 487; *Dickinson* v. *Glenney*, 27 id., 110. And this is the law of our sister states. *Jewell* v. *Davis*, 10 Allen, 69; *Warner* v. *Crouch*, 14 id., 163; *Ex parte Thomes*, 3 Greenl., 50; *Lane* v. *McKeen*, 15 Maine, 304. Whereas, in general, where the wife has the full *jus disponendi* of a *feme sole* she can convey, contract to convey, and covenant with reference to her sole estate, *in equity*. 1 Bishop's Married Women, § 853; 2 Story Eq. Jur., § 1390; *Imlay* v. *Huntington*, 20 Conn., 173, 175; *Van Allen* v. *Humphrey*, 15 Barb., 555; *Williams* v. *Christie*, 4 Duer, 29; *Basford* v. *Pearson*, 6 Allen, 504; *Steffey* v. *Steffey*, 19 Maryl., 5, 9; *Stead* v.

*Nelson*, 2 Beav., 245. It should also be remembered that the disabilities of coverture are intended not only to benefit the husband but to protect the heir from the husband. "By the general principles of law a married woman is, during coverture, disabled from entering into any contract respecting her real property, either to bind herself, *or bind her heirs*, and this disability can be overcome only by adopting the precise means allowed by law to dispose of her real estate; as in England by fine, and in America by solemn conveyance." 2 Story Eq. Jur., § 1391. She can not even bind herself by an equitable estoppel. *Lowell* v. *Daniels*, 2 Gray, 161; *Bemis* v. *Call*, 10 Allen, 517. That this court has found from the *gathered intent of statutes* another exception to the rule, in favor of beneficial contracts, in no way alters the general principle that a wife cannot turn aside a common law reversion from her heirs except as power is expressly or impliedly given by statute. And our statutes have withheld this power in general, by creating a distinction between common law reversions and other real property, which they have declared shall vest as the sole estate of the wife. Gen. Statutes, tit. 14, ch. 2, sec. 6. In other states, indeed, a married woman's reversion cannot be treated as separate estate in equity for any purpose. *Albany Fire Ins. Co.* v. *Bay*, 4 Comst., 9, 27; *Todd's Appeal*, 24 Penn. S. R., 429.

4. There was no consideration in any substantial or equitable sense. There was no benefit to her, and no injury to the petitioners. The suspension of the cause of action was no damage. The petitioners were free to sue upon the balance of their claims. And it should be noticed that Mrs. Williams's interest is reversionary in character, and where the contract relates to a reversionary interest, equity will require the party dealing with the reversioner to "make good the bargain, that is, to show that a fair and adequate consideration has been paid." 1 Story Eq. Jur., §§ 336, 337, 337*b*, and cases cited.

CARPENTER, J. The petitioners had a large claim against W. C. Williams, one of the respondents. For the purpose of

securing a part of their demand, Williams being then insolvent, they took four notes, each for the sum of twelve hundred dollars, payable at different times, and signed by Williams and his wife. Each note contained the following clause: " each intending hereby to charge our individual property and estate for the payment of this note."

Mrs. Williams owned the real estate described in the petition, but not to her sole and separate use, and this petition is brought for the purpose of collecting the notes out of said estate.

If this was the separate property of the wife, so that she had the full *jus disponendi* as a feme sole, it is quite possible that the peculiar doctrines of equity applicable to such cases would justify a decree in the petitioners' favor. So too if we had a statute, as in some of the states, giving to a married woman the power to manage, control and dispose of all her estate as a feme sole. But as we have no such statute, and this is not property to her sole and separate use, the equitable doctrines relating to such property do not apply; and the liability of Mrs. Williams's estate, if liable at all, must be placed upon some other ground.

Legislation in this state for the past few years has materially enlarged the capacity and extended the liability of married women in respect to their common law property. If the petitioners cannot recover upon the strength of some statute it must be conceded that they cannot recover at all; for it will not be pretended that her contracts, being contracts of surety, are valid at common law. The only statutes which can be said to have any direct and important bearing upon the question are the acts of 1869 and 1872. The substance of those acts, as found in the Revision of 1875, page 417, is as follows: "Actions may be sustained against a married woman, upon any causes of action which accrued before her marriage, and upon any contract made by her since marriage upon her personal credit, for the benefit of herself, her family, or her separate or joint estate."

We have just held that a note signed by a married woman with, and as surety for, her husband, to raise money to carry

into effect a compromise settlement with his creditors, was not for her benefit, the benefit of her family, or of her estate; and that an action could not be sustained against her on the note. *Bank of New England* v. *Smith & wife*, (ante, p. 327.) The reasons given there are applicable here, so far as to show that the contracts in the present case are not valid contracts at law under that statute. The question whether she is liable in equity still remains.

Her liability is insisted on, and in support of that claim some recent decisions of this court are cited. The import of those cases does not seem to be rightly understood, in consequence, perhaps, of the fact that they do not clearly distinguish between estates held to the sole and separate use of married women at common law and statutory estates. The cases of *Langenback* v. *Schell*, 40 Conn., 224, and *Buckingham* v. *Moss*, 40 Conn., 461, were actions at law and sustained by force of the statutes of 1869 and 1872. In each case the demand was strictly within the letter of the statute, inasmuch as the contracts out of which the debts originated were for the benefit of the wife, her family or her estate. The misapprehension arises from the attempt to apply the language of the court to cases and facts to which it never was intended to be applied, instead of limiting it, as it should be, to the circumstances of the case under consideration.

The cases of *Donovan's Appeal from Probate*, 41 Conn., 551, and *Hitchcock* v. *Kiely*, 41 Conn., 611, were proceedings in equity. In *Donovan's Appeal* the wife borrowed money with which she purchased real estate in her own name. She was not carrying on business, she was not abandoned by her husband, and she did not contract in writing, so that the statute of 1869 did not control the case, at least the remedy therein provided did not apply. It was held however that upon equitable principles her estate was liable for the claim. That decision was based upon two considerations mainly. First, that married women then possessed and enjoyed much greater rights and privileges in respect to their individual property, (not estates to their separate use,) than formerly; and that it was just and reasonable that such rights and priv-

ileges should carry with them corresponding obligations. Second; the statute then in force impliedly allowed married women to make contracts in the cases specified, and, if certain formal requisites were complied with, made them expressly liable at law on such contracts. The contract in that case, though not within the letter of the statutes, was within their spirit, as the debt was contracted for the benefit of her estate, and her estate actually received the benefit. It is true we had no precedent for that decision, but we think it was not a departure from the policy of our law. It was simply the application of familiar and well recognized equitable principles to the existing state of things. An attempt is now made to extend the doctrine of that case to every contract which a married woman may make; in other words, to make her liable in respect to her statutory estate to the same extent that she is liable in respect to estate which she holds to her sole and separate use. We scarcely need remark that such a doctrine, if sanctioned, would break down every barrier and effectually demolish every safeguard which the law has hitherto established and maintained for the protection of the property of married women.

It is quite possible that some expressions in the opinion of the court in *Donovan's Appeal*, if detached from the circumstances to which they were intended to apply, may countenance the claim now made; but the court did not intend to establish the doctrine contended for and make so radical a change in our law. The intention was, inasmuch as the subject matter of the case was within the equities of existing statutes, although not in the form prescribed, to give effect to the manifest intention of the parties, and afford a remedy where the strict letter of the law would not admit of the application of the legal remedy. Thus understood it falls far short of sustaining the petitioners' claim in the present case. The contracts now attempted to be enforced were not for the benefit of the wife, her family, or her estate. They were naked contracts of surety without a semblance of benefit to her. In this respect there is not only an obvious, but a vital distinction between the two cases. Her contracts are not only void at

common law, but are not authorized either by the letter or spirit of any existing statute. Mere contracts of surety which can not be enforced at law will not ordinarily be enforced in equity. Surely this principle should apply to such contracts made by persons under the disabilities of coverture.

These notes therefore are inoperative as against Mrs. Williams, and invest the petitioners with no rights, legal or equitable, as against her or her estate.

We advise the Superior Court to render judgment accordingly.

In this opinion the other judges concurred.