## SWEAZY v. KAMMER.

1. **Husband and Wife: WIFE AS SURETY.** Under the Revision a married woman did not subject her separate property to liability by becoming surety for her husband upon a promissory note.

*Appeal from Lee Circuit Court.*

TUESDAY, OCTOBER 7.

ACTION in equity. The defendant and Eugene Kammer, her husband, executed the following promissory note:

"$1,625.                    KEOKUK, IOWA, February 12, 1866.

"One year after date we, or either of us,.promise to pay to the order of Caleb Sweazy sixteen hundred and twenty-five dollars, value received, payable at the banking house of Geo. C. Anderson & Co., Keokuk, Iowa, with interest from date at the rate of ten per cent per annum until paid.

                                    "EUGENE KAMMER.
                                    "N. KAMMER." .

The object of this action is to charge the separate estate of the defendant with the payment of said note. The Circuit Court dismissed the petition, and the plaintiff appeals.

*M. A. Ballinger* and *H. Scott Howell,* for appellant.

*Gillmore & Anderson,* for appellee.

SEEVERS, J.—The note was given for money loaned Eugene Kammer, and was used in his business operations. No part

1. HUSBAND and wife: wife as surety.

of it was devoted to the separate use of the defendant, or for the improvement of her separate property. The plaintiff testified that Mr. Kammer asked him for

the money and "said that his wife wanted him to borrow it and that she would sign the note with him. I told him I would see about it. Mrs. Kammer then spoke to me about it, and requested me to let him have the money and she would sign the note and see that I never lost a cent by him. I had some doubts about his financial standing. * * * We talked about it at different times, and she always said she would see that I did not lose a cent by him. I was thus cautious, as he was considerably in debt. * * * Knowing what I learned from his own mouth, I could not have loaned that amount of money without good security, which I considered his wife to be, as she was estimated to be worth twelve or fifteen thousand dollars."

In October, 1866, the defendant borrowed some money on a mortgage of her separate property, and therewith made a partial payment on said note. The intent of the defendant to charge her separate property can only be inferred from the evidence and circumstances aforesaid. The defendant, in her evidence, substantially denies borrowing the money or saying anything to the plaintiff on the subject. Both she and her husband testify she signed the note unwillingly, and did so only because of certain threats made by her husband.

We are unable to say that an intent to charge the defendant's separate estate has been established by the parol evidence. Conceding it is competent, it may be so established. We think the right of the plaintiff to recover must be determined by the note and the effect of its execution by the defendant, as surety of her husband. At the time the note was executed the Revision was in force, and, so far as the rights of these parties are governed by any statute, they must be determined by its provisions. That the defendant was not bound personally by the execution of the note, and that a recovery thereon against her could not be had at law, was determined in *Rodemeyer v. Rodman*, 5 Iowa, 426, and *Jones v. Crosthwaite*, 17 Id., 393.

*Wolff v. Van Metre et al.*, 19 Iowa, 134, was an action in

equity to foreclose a mortgage given to secure a note executed by a husband and wife, and it was held no personal judgment could be obtained against the wife. *Patton v. Kinsman*, 17 Iowa, 428, was also an action in equity, but the facts were so essentially different from the case at bar that it cannot be regarded as authority.

It is believed to be true that the precise point insisted on by the appellant has never been determined by this court. Independent of any statute the question is not whether a married woman may bind her separate estate in equity for her husband's debts, as there seems no doubt she may do so, but the point is how her intention must be established.

The rule in England seems to be that as she is not personally bound by the execution of a note as surety for her husband, that her intent to charge her separate property is sufficiently shown by the execution of such a note. This rule has not been universally followed in this country. Notes to *Hulme v. Tenant*, vol. 1, part II., Leading Cases in Equity, 735; *Yale v. Dederer*, 22 N. Y., 450, and same case, 68 Id., 329.

The rule in New York, and some other States, is that the execution of a promissory note is not sufficient to charge the separate estate, though such was the intent, unless it be so expressed in the note or some other written instrument.

It is not deemed necessary to cite other authorities or further refer to the rule in equity, as we think the statute in force when the note was executed must control. It was provided thereby: "Except as herein otherwise declared, the husband is not liable for the separate debts of the wife, nor is the property of the wife, nor the rent or income thereof, liable for the debts of the husband. But the separate debts of the wife, as herein contemplated, are only those growing out of the contracts mentioned in the next section." Revision, § 2505. "Contracts made by a wife in relation to her separate property, or those purporting to bind herself only, do not bind the husband." Revision, § 2506.

These statutory provisions are general, and must apply to both actions at law and in equity, and the property of a wife is expressly exempted from the debts of her husband. Nor is this all, but the contracts which bind a wife or her property are expressly defined to be those made in relation to such property or which purport to bind herself only. It was said by DILLON, J., in *Jones v. Crosthwaite*, before cited, that this "statute seems founded on a wise policy for the more effectual protection of married women."

At law the identity of a married woman was deemed merged in her husband. Her contracts were void, and, therefore, could not be enforced. The statute was not required to more effectually protect her in an action at law.

It was only in equity her separate property could be made liable on a contract executed jointly with her husband.

The policy of the statute being the "more effectual protection of married women," it must have been designed to affect such contracts as that in the case at bar, and the remedy thereon as administered in courts of equity. Otherwise, it is difficult to see for what purpose it was enacted.

AFFIRMED.