Ferdon *v.* Miller.

---

## John W. Ferdon

*v.*

## Agnes M. Miller et al.

A married woman, in order to enable her husband to procure his portion of the capital of a partnership, gave a mortgage on her separate estate to her husband's partner, to be used for the purpose. He obtained the money from the complainant on an assignment of the mortgage—*Held*, that an agreement between the partners and the mortgagor as to the payment of the mortgage out of the husband's profits of the firm's business, could not affect the title or interest of the complainant in the mortgage, he having had no notice of such agreement at the time of the assignment.

---

Bill to foreclose.    On final hearing on pleadings and proofs.

*Mr. C. H. Voorhis*, for complainant.

*Mr. R. O. Babbitt*, for defendants.

The Chancellor.

In March, 1875, Christopher R. Miller and John Ferdon en-

---

Note.—The text-books and cases cited therein agree that, generally speaking, a wife may mortgage her separate estate to secure her husband's debt, *1 Bishop on Mar. Wom.* §§ 604, 874 ; *1 Jones on Mort.* §§ 109, 110, 113, 114 ; *2 White & Tudor's Lead. Cas. in Eq.* 1922. And the later cases, where there exists no statutory prohibition, confirm the same doctrine, *Voorhies* v. *Granberry*, 5 Baxter 704 ; *Molloy* v. *Clapp*, 2 Lea 586 ; *McFerrin* v. *White*, 6 Coldw. 499 ; *Layman* v. *Schultz*, 60 Ind. 547, *and cases cited* ; *Brick* v. *Scott*, 47 Ind. 299 ; *Nippel* v. *Hammond*, 4 Colorado 211 ; *Radford* v. *Carwile*, 13 W. Va. 572 ; *Williams* v. *Urnston*, 35 Ohio St. 296 ; *Hall* v. *Eccleston*, 37 Md. 510 ; *Kerchner* v. *Kempton*, 47 Md. 568 ; *Kinner* v. *Walsh*, 44 Mo. 65 ; *Wilcox* v. *Todd*, 64 Mo. 388 ; *Purvis* v. *Carstaphan*, 73 N. C. 575 ; *Mebane* v. *Mebane*, 80 N. C. 34 ; *Black* v. *Galway*, 24 Pa. St. 18 ; *O'Hara* v. *Baum*, 88 Pa. St. 114 ; *Burnett* v. *Hawpe*, 25 Gratt. 481 ; *Fraser* v. *Fishburne*, 4 Rich. (N. S.) 314 ; *Witsell* v. *Charleston*, 7 Id. 88 ; *Nourse* v. *Henshaw*, 123 Mass. 96 ; *Hassey* v. *Wilke* (*Cal.*), 10 Reporter 521 ; *Rhodes* v. *Gibbs*, 39 Tex. 432 ; *Leffingwell* v. *Freyer*, 21 Wis. 398 ; *Stephen* v. *Beall*, 22 Wall. 329 ; *Daniels* v. *Henderson*, 5 Fla. 452 ; *Campbell* v. *Tompkins*, 5 Stew. Eq. 170, 6 Id. 362 ; *Stone* v. *Montgomery*, 35 Miss. 83 ; *Butterfield* v. *Stanton*, 44 Miss. 16.

Ferdon v. Miller.

tered into copartnership in business, in New York. It was
agreed between them that each should contribute half of the
capital, which was to be $3,000. Miller not having the money
to contribute his share, it was agreed between them that he and
his wife should give Ferdon their bond, secured by mortgage on
property in Jersey City, the title to which was in Mrs. Miller, to
secure payment of $1,500, to enable Ferdon to raise it. The bond
and mortgage were given accordingly, and Ferdon having raised
the money on his note for $2,000, endorsed for his accommodation
by the complainant, and the security of a $1,000 government
bond, borrowed by him from J. W. Littlefield, the return of
which bond the complainant guaranteed, and the note being still
unpaid and the bond unreturned, Ferdon assigned the bond and
mortgage to the complainant in November, 1875, to secure him
against his liability upon his endorsement and guaranty. The
complainant, subsequently to the assignment, paid the note, and
paid to Littlefield $1,000, in discharge of his obligation upon
his guaranty, to enable Littlefield to redeem the government
bond. The bond and mortgage were payable in two years from
their date, March 1st, 1875, with interest payable semi-annually,
and contained a provision that in case of default for thirty days
in the payment of interest, the principal should, at the option of
the holder, be due immediately, and also a provision giving to

The contrary doctrine is held under the Alabama statute, *Mitchell* v. *Lip-
pincott, 2 Woods 467; 1 Cent. L. J. 302; Wilson* v. *Knight, 59 Ala. 172;
Thames* v. *Rembert, 63 Ala. 562; Blakeslie* v. *Mobile Co., 57 Ala. 205; Wil-
liams* v. *Bass, Id. 487;* and the Georgia statute, *Dunbar* v. *Mize, 53 Ga. 435;
Campbell* v. *Murray, 62 Ga. 86; Veal* v. *Hurt, 63 Ga. 723;* and the Mississippi
statute, beyond the wife's income, *Erwin* v. *Hill, 47 Miss. 675; McDuff* v. *Beau-
champ, 50 Miss. 531; Hand* v. *Winn, 52 Miss. 784; Klein* v. *McNamara, 54
Miss. 90; Stephenson* v. *Miller, 57 Miss. 48;* see *Lightfoot* v. *Bass, 2 Tenn. Ch.
677.*

Where the mortgage covers lands of both husband and wife, *William and
Mary College* v. *Powell, 12 Gratt. 372.*

Where the indebtedness of the husband is future, *Hoffey* v. *Carey. 73 Pa.
St. 431;* or past, *Wilhelm* v. *Schmidt, 84 Ill. 183; Eisenlord* v. *Snyder, 71 N.
Y. 45; Mize* v. *Hawkins, 54 Ga. 500.*

The *lex rei sitæ* governs, *Frierson* v. *Williams, 57 Miss. 451;* see *Bell* v.
*Packard, 69 Me. 105; Burchard* v. *Dunbar, 82 Ill. 451.*

Only the wife can take advantage of her coverture as a defence, *Ricketson*

Ferdon *v.* Miller.

the Millers the right to pay the principal before it should become due, in installments of not less than $200.

The defence made to this suit, which is brought to foreclose the mortgage, is, first, that the mortgage cannot be enforced, because it was given by Mrs. Miller upon her separate estate, and is, as she insists, a mere promise to pay the debt or answer for the default of her husband; and next, that the bond and mortgage were given on the understanding that the firm was to make use thereof, if necessary, for business purposes, until Miller's share of the net profits should amount to the sum named in the bond and mortgage, and then they were to be delivered up for cancellation; and it is alleged that in September, 1875, before the assignment to the complainant, Miller's share of the net profits amounted to $2,600, and it was agreed between him and John Ferdon that $600 of that amount should be applied to the payment of the bond and mortgage, and the balance remain in the hands of the firm subject to Miller's order, to be drawn out by him if he should wish to do so, and that Miller did not draw it out, but John Ferdon held it, and ought to have applied it to the payment of the bond and mortgage, and informed the Millers that he had done so, and promised to return the bond and mortgage to them.

A married woman may, with her husband, mortgage her land

v. *Giles, 91 Ill. 154; McGarock* v. *Whitfield, 45 Miss. 452; Whitworth* v. *Carter, 43 Miss. 61; Campbell* v. *Babcock, 27 Wis. 512; Denison* v. *Gibson, 24 Mich. 187; Stewart* v. *Boyle, 23 La. Ann. 83; Kerchner* v. *Kempton, 47 Md. 568.*

CONTRA: *Ragsdale* v. *Gossett, 2 Lea 729; Third National Bank* v. *Blake, 73 N. Y. 260; Coats* v. *McKee, 26 Ind. 223; Brookings* v. *White, 49 Me. 479; Claverie* v. *Gerodias, 30 La. Ann. 291; Jenz* v. *Gugel, 26 Ohio St. 527; Williams* v. *Huyunin, 69 Ill. 214; Doyle* v. *Kelly, 75 Ill. 574; Taylor* v. *Boardman, 9.3 Ill. 566; Sweazy* v. *Kammar, 51 Iowa 642; Yale* v. *Dederer, 68 N. Y. 329; Second Nat. Bank* v. *Miller, 2 N. Y. Sup. Ct. 104; Smith* v. *Williams, 43 Conn. 409; Foxworth* v. *Magee, 44 Miss. 430.*

So, where the obligation is jointly signed by the husband and wife, *Bressler* v. *Kent, 61 Ill. 426; Schmidt* v. *Postel, 63 Ill. 58; Hennessey* v. *Ryan, 7 R. I. 548; Rhodes* v. *Gibbs, 39 Tex. 432; Davies* v. *Jenkins, L. R. (6 Ch. Div.) 728; Viser* v. *Scruggs, 49 Miss. 705; Agnew* v. *Merritt, 10 Minn. 308.*

A married woman cannot become surety on a guardian's bond, *Gosman* v. *Conger, 7 Hun 60, 69 N. Y. 87.*

to secure the payment of his debt, or the debt of any other person, for the payment of which she is in no way liable, and in which she has no interest. *Jones on Mort.* § *113*. And her mortgage, given to secure the payment of the bond of her husband, will not be regarded as without validity or binding effect, simply because the consideration of the bond is an obligation merely moral, and not enforceable at law or in equity. *Campbell* v. *Tompkins, 5 Stew. Eq. 170; S. C., affirmed, 6 Stew. Eq. 362*. Mrs. Miller's mortgage of her separate estate, made for the purpose of being negotiated, is clearly valid against her in the hands of a *bona fide* assignee for value.

As to the other ground of defence : Mrs. Miller herself says that John Ferdon was to use the bond and mortgage as security for the $1,500, until the time when Miller's share of the net profits should amount to that sum, and, if necessary, he was to raise money on them. Again, she says they were given to enable Miller to go into business with Ferdon, to secure Miller's share of the capital; that he was to put in $1,500, and did put it in, by giving the mortgage. Miller says the mortgage was given to Ferdon as a collateral to enable him to raise money, and that the mortgage represented half of the capital, and he also says that Ferdon was to take the mortgage and raise money, if necessary, for the firm. He says he understood that Ferdon procured $1,500 for

---

As to an appeal bond, *Woolsey* v. *Brown, 11 Hun 53*.

A note, without reference to her separate estate therein, is sufficient to charge her as such surety, *Bishop on Mar. Wom. § 878; Williams* v. *Urmston, 35 Ohio St. 296; Metropolitan Bank* v. *Taylor, 62 Mo. 338; Burnett* v. *Hawpe, 25 Gratt. 481; Hall* v. *Eccleston, 37 Md. 510; Major* v. *Holmes, 124 Mass. 108; Willsey* v. *Hutchins, 10 Hun 502; McVey* v. *Cantrell, 70 N. Y. 295; Williams* v. *King, 43 Conn. 569; Radford* v. *Carwile, 13 W. Va. 644*.

Fraud or duress employed to obtain the wife's signature, annuls the instrument, *Levi* v. *Earl, 30 Ohio St. 147; Singer Manf. Co.* v. *Rawson, 50 Iowa 634; Smith* v. *Osborn, 33 Mich. 410; Linn* v. *Blizzard, 70 Ind. 23; Mersuran* v. *Werges, 3 Fed. Rep. 378; Barth* v. *Kasa, 30 La. Ann. 940; Hammit* v. *Bull, 8 Phila. 29*. See *Wright* v. *Pennington, 12 Vr. 48, 14 Vr. ; Comegys* v. *Clarke, 44 Md. 108; Freeman* v. *Wilson, 51 Miss. 329*.

But not in the hands of an innocent holder, *Conn. Life Ins. Co.* v. *McCormick, 45 Cal. 580; Finnegan* v. *Finnegan, 3 Tenn. Ch. 510; Spurgin* v. *Traub, 65 Ill. 170*.—[REP.

him for his share of the capital. The proof is that Ferdon obtained it by means of the complainant's endorsement and guaranty before mentioned, to secure which the bond and mortgage were assigned. It appears by the books of the concern that Miller is credited, under date of March 15th, 1875, with the $1,500, as so much cash put in by him, and Ferdon has a like credit under the same date. Both Miller and his wife say in their testimony as well as in their answer, that the bond and mortgage were to be used as security to raise the money, if necessary. It appears, in fact, to have been necessary. And when they had been used for the purpose by assigning them to the complainant, the title of the complainant to them could not be affected by any agreement between the Millers and Ferdon as to the payment thereof out of the profits, of which he had no notice when he took his assignment. The complainant is no relation or connection of Ferdon. There is nothing in the evidence to induce doubt as to his *bona fides* in the transaction, or as to his candor in his testimony, and he is corroborated by John Ferdon. The Millers confided the bond and mortgage to Ferdon in order that he might negotiate them, and to that end and that he might appear to be the true owner of them, made them in his favor. They contained no evidence of any trust or confidence, but purported to be securities for an existing debt, with careful provision to secure the prompt payment of interest on the one hand, and the privilege of payment of the principal by installments on the other. There was no indication or intimation that they were not in all respects what they purported to be. If there had been, it would have been fatal to their negotiability. The complainant is entitled to a decree.