PATTIE A. FREEMAN VS. M. E. & J. K. WILSON.

1. MARRIED WOMEN: *Acknowledgment of deeds: Duress.*

It is not sufficient to prove that the husband is a violent, turbulent and intemperate man in his habits, and when drunk, prone to quarrels and violence; and that he was domineering towards his wife, and she was in the habit of obeying all his commands, to render a deed of the wife void for duress. The duress must be clearly and emphatically proved. It must be shown that in the particular transaction she was induced by the persuasion or compulsion of her husband to execute the deed.

2. — *Deed absolute: Mortgage.*

Courts of equity will examine into the true character of a conveyance, though it imports on its face absolute title, and give it the effect contemplated by the parties, to be ascertained by contemporaneous and subsequent conduct. If they were dealing with reference to a loan, and the deed intended as a security for money loaned, parol evidence is admissible to explain the true character, and it may be construed to be a mere security for the money, and entitle the debtor to a reconveyance upon the payment of the money so secured.

APPEAL from the Chancery Court of *Lee* County.

Hon. O. H. WHITFIELD, Chancellor.

January 8, 1874, appellant filed her bill in the chancery court of Lee county, alleging that on June 26, 1870, she was the owner in her own right of the lands in controversy; that she was a *feme covert;* that her husband was a violent and dissipated man, spending his time in drinking and gambling; that she was afraid to disobey him; that she was in constant fear and duress; that on

said day, June 26, 1870, her husband ordered her to accompany him to an officer to acknowledge a paper he had prepared. When in the presence of the officer, her husband received from J. K. Wilson $995; that then she signed and acknowledged the paper in the presence of her husband and others; that some days afterwards she received a bond from appellee, conditioned to make a deed back to her upon paying (twelve months after date) $941 in gold; that she never received any of the money; that the land was worth at the time $3,200. The bill prays to have an action of forcible entry and unlawful detainer now pending, perpetually enjoined, and the deed canceled. In the alternative, to have the deed declared to be a mortgage, etc.

Defendants filed an answer and motion to dissolve the injunction; the motion was overruled. Exceptions to the answer were filed and sustained, with leave granted to file a new answer, in which the coverture is admitted, denying any knowledge of the private relations of Mrs. Freeman and her husband; denies that the acknowledgment was taken in the presence of others; denies that the husband received the money, but asserts that it was paid to the wife; admits the execution of the title bond to reconvey, upon the return of the money in gold; denies that it was done to evade the law of usury; denies the allegations as to the duress, but asserts that the money was loaned to her at her request. The substance of the testimony is sufficiently stated in the opinion of the court.

The court below construed the deed to be a mortgage, and decreed to defendant $1,260, giving thirty days for payment, and appointed a receiver to rent the land and to apply the proceeds of the rent to the payment of the decree, and the case comes to this court on appeal from the decree.

*Messrs. Robbins & Allen*, for appellant:

1. We think the testimony fully establishes the duress.

2. If the duress is not sufficiently established, the certificate to the deed was sufficiently impeached to authorize the cancellation of the deed.

3. There can be no doubt but that the court was in error in its decree under the facts in the case, under the rule announced in Visor *v.* Scruggs, referred to by counsel for appellee.

*Messrs. Blair & Clayton,* for appellee:

The bill is framed with two aspects. It is claimed, first: That the appellant signed said deed in the presence of her husband. Aside from the bill and answer, the evidence on this point is the deposition of appellant, reiterating the statement in her bill, and contradicting the deposition of the justice of the peace sustaining the acknowledgment, and J. K. Wilson, who executed the contract as agent for his wife, Mary Wilson, who says that he and the husband of appellant left the presence of appellant just before the signing. No notice of any duress is shown. The party affirming duress or coercion must establish it. Love *v.* Taylor, 26 Miss., 567 ; Lockhart *v.* Camfield, 48 id., 470. The second aspect of the bill is, that the transaction was a mortgage to secure the payment of money loaned to the husband of appellant. The law on the case is familiar. The question is, can a married woman incumber her real estate for the debt of her husband, or for money loaned her husband. Foxworth *v.* Magee, 44 Miss., 430 ; Viser *v.* Scruggs, 49 id., 705. Appellant is bound by her case as made by the bill.

Simrall, J., delivered the opinion of the court.

This bill was filed by Pattie A. Freeman (complainant) against M. E. & J. K. Wilson, in the double aspect of either canceling the conveyance of the quarter section of land made by the complainant and her husband, to Mrs. Wilson, or of treating the conveyance as a security for money loaned.

The complainant states that she was compelled by her husband under duress of fear and threats to execute the deed ; and that her acknowledgment was not taken in the presence of her husband ; that the money was paid to her husband and not to herself. The allegations in substance, on this point are that Mrs. Wilson loaned the money to her husband, and took the land as security

therefor. "She never made a contract about the money, or authorized any one to do so. She claims that she was ignorant of the contents of the deed, and signed under duress. In her deposition, Mrs. Freeman, supports the statements of her bill, repeating that she was satisfied Capt. Freeman (her husband) got the money and that she would pay it if she knew where to get it.

Mrs. Wilson and her husband executed a bond to Mrs. Freeman, to convey her the land, on payment twelve months thereafter of $950 in gold.

The answer of the defendants insists, that the real transaction with Mrs. Freeman was a sale of the land, and that their bond was executed in witness of an agreement to sell and reconvey upon the terms stipulated. They allege that before the proceedings were begun to recover possession of the premises, the defendants tendered to Mrs. Freeman a deed and demanded payment of the money.

There is no testimony showing that Mrs. Freeman was constrained by fear, or threats, to make the conveyance to Mrs. Wilson. There is a good deal of testimony, to the effect that Freeman was a violent, turbulent man, of intemperate habits, and when under the influence of intoxication, prone to quarrels and violence. It was proved that he was dogmatic and domineering towards his wife when drunk, and that she was habituated to comply implicitly with his commands and wishes. The chancellor was of opinion that the testimony did not establish this allegation of the bill. Upon a review of it, we think that these propostions are proved: That Freeman was a turbulent, violent man, of dissolute habits, both a drunkard and gambler; that his wife was afraid of him, and conformed promptly to his commands. But the testimony comes short of showing that in this particular transaction, Mrs. Freeman was induced, by the persuasion or the compulsion of her husband to go into it. Several persons were present when the deed was signed by her. It was read to her by Col. Blair, who wrote it. The justice of the peace deposes, that his certificate

states the truth ; that he did take her acknowledgment separate and apart from her husband.

Nothing occurred at the time the witnesses speak of it, calculated to excite a suspicion that Mrs. Freeman was acting under duress. Her playful remark, that instead of being under the influence of the fear, threats or compulsion of her husband, " the compulsion was on the other side," contributes to bear out the view which is presented in the testimony for defendants; that is, that Mrs. Freeman was anxious to get the money, and was willing to make the deed to the land for the money. Since the death of her husband, and before this litigation was begun, she more than once recognized the debt, and expressed a willingness to pay it, if she had or could get the means.

We agree with the chancellor in the conclusion which he reached on this point, and also, that Mrs. Freeman, in reality, acknowledged the deed, as required by the statute. The duress was not proved with that clearness and emphasis necessary to set aside the deed.

The conveyance must, therefore, stand as either assigning the title unconditionally to Mrs. Wilson, or as in the nature of a mortgage security for the money advanced. Manifestly the decree establishing the deed as a mortgage, merely, is much more beneficial to Mrs. Freeman than suffering it to operate as an absolute conveyance. For the preponderance of the testimony is, that the land is worth more than twice the amount of the debt.

It is now well settled doctrine in courts of equity, that they will examine into the true character of a conveyance, which, on its face, imports an absolute title, and will give it effect, as contemplated by the parties, to be ascertained by their contemporaneous and subsequent conduct. If they are dealing with respect to a loan, and the deed was intended as a security for the debt, parol evidence may be received to explain the true character, and limit the absolute deed into a mere security for the money, so that when the debt is paid the debtor will be entitled to a reconveyance of the estate. Adams Eq., top pp. 247-8-9 ; Kenton v.

Vandengrift, 42 Penn. St., 339 ; Prewett v. Dobbs, 13 S. & M., 440 ; Anding v. Davis, 38 Miss., 594 ; Vasser v. Vasser, 23 id., 378 ; Littlewort, Sup't, v. Davis et al., 50 id., 407.   All the circumstances may be looked at, especially a great inadequacy of price, and an agreement to recovery, where there has been a loan of money, or a pecuniary debt, the tendency of a court of equity would be to regard such deed and agreement rather as a mortgage than a conditional sale.   Pearson v. Seay, 35 Ala., 612 ; Russell v. Southard, 12 How. (U. S.), 139.

Looking to all the circumstances, some of the more prominent of which are, that the application in the first instance was to borrow money, the sum advanced was much below the value of the land, the statement by Mrs. Wilson, to the effect that she regarded the deed as a security for the money, and of her husband that all he wanted was the money back, the agreement to reconvey, and the insertion of a larger sum, as the price, in order to cover usury for the money advanced, we are satisfied with the conclusion of the chancellor, as just and equitable, and consistent with the facts.

The case is like that of Viser v. Scruggs, 49 Miss., a mortgage security for the husband's debt.   But whether the decree is right or not in converting the deed into a mortgage, it was such redress as Mrs. Freeman herself sought, if she failed to establish the duress.

Manifestly the appeal is prosecuted with a view of reversing the decree, because the conveyance of Mrs. Freeman was not set aside, upon the ground of compulsion and duress.   If this court concurs with the chancellor on that point, manifestly the most favorable view for her is to give effect to the deed as a mortgage.

There is no error in the conclusion of the chancellor, in the case made, by the allegations of duress and compulsion.   The decree is such as she desired, if the deed was not vacated.

Decree affirmed.