## JOHN A. KLEIN *v.* JOANNA McNAMARA ET AL.

1. CONDITIONAL SALE. *Mortgage. Distinction.*
   The following tests of a mortgage are of almost conclusive weight:
   (1.) Was the treaty in reference to a borrowing and lending of money,
   and was the obligation to repay incurred? (2.) Did the relation of
   creditor and debtor exist before the conveyance, and did that rela-
   tion continue? (3.) Was there great disparity in the price of the
   property?

2. SAME. *Presumption.*
   In cases of doubt, the court leans in favor of a mortgage rather than a
   sale.

3. MORTGAGE. *Parol evidence of defeasance to deed.*
   Parol evidence is admissible to show that a deed, absolute on its face,
   is in reality a mortgage; and this rule is not altered by Code 1871,
   § 2896 (Code 1857, p. 359, art. 5), providing that declarations of
   trust shall be made and manifested by writing or will. The court
   proceeds on the principle that, if the real agreement was that the
   transaction should be a mortgage, it is a *fraud* to insist on the con-
   veyance as absolute.

4. DEED ABSOLUTE ON ITS FACE. *Parol agreement to repurchase.*
   If the deed is absolute on its face, a mere parol agreement to repurchase
   cannot be enforced, under the Statute of Frauds.

5. CONDITIONAL SALE. *Mortgage. Married woman. Case in judgment.*
   M. being greatly embarrassed, his wife allowed him to raise money on
   her house. B., to whom he was led to apply, declined, after legal
   advice, to take a mortgage, but agreed to take a deed and loan the
   money, to be repaid in twelve months, with one and a quarter or one
   and a half per cent a month interest. M. and wife executed the deed
   on the parol understanding that a reconveyance was to be made on
   repayment of the money. Subsequently, ill-feeling sprang up be-
   tween B. and M., and the latter explained the matter to K., who paid
   B. the balance of $1,875, and received a quitclaim deed from B.,
   reciting the consideration to be $1,000. K. claimed that $2,000 was
   due to B., and that he had made further advances to M. *Held,* a
   mortgage to secure the sum paid by K. to B., and that parol evidence
   was admissible to show its true character. *Held, further,* that Mrs.
   M.'s consent bound her house until the amount paid by K. to B. was
   refunded, but that sum being repaid, the property was not security
   for future loans.

6. MARRIED WOMEN. *Conveyance of separate estate. Parol evidence that it is a security for husband's debt.*

Under § 1778, Code 1871 (art. 23, p. 336, Code 1857), a wife cannot, by any conveyance known to the law, make her separate property security for her husband's debt, except to the extent of the income. And where it does not appear on the face of the papers, parol evidence will be received to show that the deed is in fact but a security for the husband's debt.

APPEAL from the Chancery Court of Warren County.

Hon. EDWIN HILL, Chancellor.

Joanna McNamara filed her bill in chancery against John A. Klein, Benjamin McNamara, her husband, and Bettie B. Willis, to cancel, as clouds on the title to a house and lot belonging to her, a deed from herself and husband to Mrs. Willis, and a quitclaim deed from Mrs. Willis to Klein, on the ground that the deeds constituted a mortgage for advances, which had been repaid. Klein and Mrs. Willis answered the bill, and Klein made his answer a cross-bill. The defence was, that the deed to Mrs. Willis was absolute, and not a mortgage, and that the quitclaim deed to Klein conveyed to him the fee, without any qualification whatever. The object of the cross-bill was, that, in the event it should be held a mortgage, Klein might have the property, or its income, subjected to the payment of his advances. The complainant, in her answer to the cross-bill, denied that Klein had any claim, by mortgage or otherwise, against the property.

A mass of testimony was taken on both sides, the facts proved by which are stated in the opinion of the court.

The Chancellor, on final hearing, finding that the deed from McNamara and wife to Mrs. Willis was intended as a mortgage, that the quitclaim deed from Mrs. Willis to Klein was also but a security for money advanced to pay the balance due Mrs. Willis, and that Klein had been repaid in full, declined to hold the property chargeable with any further advances from Klein to Mr. McNamara, and decreed that the cross-bill be dismissed; that the two deeds be set aside, and declared null and void, as a cloud upon the title of the complainant, and be delivered up to be cancelled; and that Klein pay the costs of the suit. From this decree Klein appealed.

*Buck & Clark*, for the appellant.

1. We do not deny the rule, that, in proper cases, and in pursuance of the intention of the parties at the time of the contract, a deed, though absolute on its face, may be declared a mortgage upon parol testimony. But we say: (1.) That it should be a case falling within the established rules of equity governing the subject. (2.) That the facts of the case must show clearly, explicitly and satisfactorily that the parties understood and designed the contract to be one of mortgage, and that the burden of proving this rests upon the party assailing the absolute character of the deed.

As to the first proposition: It is an exception engrafted by courts of equity upon the general rule that written contracts cannot be qualified by parol testimony. This exception has no operation in courts of law. *Watson* v. *Dickens*, 12 S. & M. 608. The class of cases in which it is allowed to prevail in courts of equity are those in which the defeasance, agreed upon by the parties as a part of the contract, does not appear by writing through fraud, accident, or mistake. 4 Kent Com. 141; 2 Story Eq. Jur. § 1018; 1 Greenl. on Evid. § 296; 1 Hilliard on Mortgages, 44.

As to the second proposition, see *Vasser* v. *Vasser*, 23 Miss. 380; *Conway* v. *Alexander*, 7 Cranch, 218; *Weatherly* v. *Weatherly*, 40 Miss. 469; *Todd* v. *Campbell*, 32 Penn. St. 250. Parol evidence is admissible only to explain the real intention and purpose of the parties at the time of the conveyance. *Strong* v. *Stewart*, 4 Johns. Ch. 167; *Todd* v. *Campbell*, 32 Penn. St. 250; *Williams* v. *Owen*, 5 Myl. & Cr. 303.

Certain criteria are recognized as distinguishing an absolute sale from a mortgage; viz.: (1.) The adequacy of the price. (2.) An existing debt, the evidence of which is not cancelled (*Rhines* v. *Baird*, 41 Penn. St. 264), evidences the conveyance to be a mortgage, while, if the debt is cancelled by the mortgage, the inference is strong the other way; and an agreement, giving the debtor time to repurchase, will not convert the deed into a mortgage. *Robinson* v. *Cropsey*, 2 Edw. Ch. 138. (3.) The absence of an obligation to repay the purchase-money. *Conway* v. *Alexander*, 7 Cranch, 218; *Williams* v. *Owen*, 5 Myl. & Cr. 303; *Scott* v. *Fields*, 7 Watts,

360.   (4.) Where the grantee enters into immediate possession and enjoyment under an absolute conveyance. *England* v. *Codrington*, 1 Eden, 169 ; *Williams* v. *Owen*, 5 Myl. & Cr. 303.

With these suggestions in view, counsel called the attention of the court to the proofs in the cause bearing upon the specific nature of the contract between McNamara and his wife, and Mrs. Willis ; and contended that the proof showed : (1) That the sum paid by Mrs. Willis was the full value of the property ;   (2) that there was no obligation on the part of McNamara to repay the purchase-money to Mrs. Willis ; and (3) that, upon the deed being made to Mrs. Willis, she went into possession of the property ; for Klein's possession was derived from her.   If this conveyance to Mrs. Willis, counsel further urged, will not bear the construction of an absolute sale, then, not being a mortgage, it is a conditional sale ; and, if so, the remedy sought by this proceeding is a mistaken one.   *Hoopes* v. *Bailey*, 28 Miss. 328 ; *Harper* v. *Harper*, 5 Bush (Ky.), 176.

2.   Let this transaction between McNamara and Mrs. Willis be as it may, the appellant Klein is a *bona fide* purchaser for value without notice of any thing that transpired in the course of it ; and he will be protected by a court of equity.   *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 344, 353 ; *Dickson* v. *Green*, 24 Miss. 618 ; *Perkins* v. *Swank*, 43 Miss. 349 ; *Wilson* v. *Wall*, 6 Wall. 83.   Mrs. McNamara having authorized the sale to Mrs. Willis, and having ratified her husband's acts in having the conveyance made to Klein, is estopped.   Bigelow on Estoppel, 475, 488, 492, 604 ; *McCullough* v. *Wilson*, 21 Penn. St. 436 ; 1 Johns. Ch. 353 ; 28 Miss. 414 ; 24 Miss. 612 ; 6 Wall. 83.

The learned counsel then went at large into the facts, arguing that Klein was a purchaser for value without notice, and that Mrs. McNamara knew all the transactions at the time they occurred, was a party to them, and was bound by them, and urged that, in any event, the property should be held bound for the repayment of the sums of money advanced by Klein.

*Potter & Green*, on the same side.

*George L. Potter*, on the same side, argued the case orally, and filed a brief making the following points : —

I. This decree, based upon the idea that the alleged secret parol trusts have been legally established and proved ; and that so, the absolute deed to Mrs. Willis and the absolute deed to Klein are, in equity, mortgages; and that so, the prayer to cancel the deeds, as clouds on the title of the complainant, should be granted, without an offer to redeem, or prayer for an account, and without an account taken, must be reversed, and the bill dismissed, for these reasons ; viz. : —

1. The Code of 1857 introduced a new clause into the Statute of Frauds, Code 1857, p. 359, § 5, which is continued in the Code of 1871, § 2896. By those sections, " all declarations or creations of trusts or confidence, of or in any land," are " utterly void," unless " made and manifested by writing, signed by the party who declares or creates such trust," &c. ; " and every writing declaring or creating a trust shall be acknowledged or proved as other writings, and shall be lodged," for record, with the proper chancery clerk ; and then it " shall only take effect from the time it is so lodged for record." These sections do not include trusts that " arise or result, by implication of law, out of a conveyance of land."    § 2896. If not created or declared by will, four things are necessary to the existence of a trust within this section ; viz. : (1.) A writing, declaring or creating it. (2.) That the writing be signed by the party who declares or creates the trust. (3.) That the writing be duly acknowledged or proved. (4.) That the writing, thus acknowledged or proved, be duly lodged for record with the chancery clerk of the proper county.

Prior to the Code of 1857, parol trusts or defeasances of absolute deeds might be established, but not since. *Anding* v. *Davis*, 38 Miss. 593, 594. The obvious intent of this provision was to preclude judicial exceptions and evasions of the policy of the law, and to render them impossible. It excludes the possibility of proving such trusts by letters, memoranda, or even by the sworn pleading of a party. That a parol defeasance, like that set up in this bill, is a trust and confidence, within this section, see *Anding* v. *Davis*, 38 Miss. 593, 594.

It has been properly called a " trust or right of redemption."
*Ransone* v. *Frayser*, 10 Leigh, 592.  In *Anding* v. *Davis* it is
termed a " trust in parol."  38 Miss. 594.

Our courts adhere closely to the Statute of Frauds, and
allow no exceptions not made by the legislature.  *Gothard* v.
*Flynn*, 25 Miss. 61, 63; *Box* v. *Stanford*, 13 S. & M. 96, 97;
*Beaman* v. *Buck*, 9 S. & M. 210.  By force of this section, the
alleged trust charged in the bill and attempted to be proved
is " utterly void; " and this decree seeks to give effect to it,
in direct disregard of the statute.

2. This is not a case of mistake or accident.  It was ex-
pressly agreed that the deed was to be absolute.  There was
to be no written defeasance.  No fraud is charged or proved.
All that is asserted is a secret trust.  In such a case, apart
from the stringent provision of our peculiar statute, no relief
could be granted on parol proof.  *Cook* v. *Eaton*, 16 Barb.
448 *et seq.; Rathbun* v. *Rathbun*, 6 Barb. 105; *Thomas* v.
*McCormack*, 9 Dana, 108; *Lee* v. *Evans*, 8 Cal. 424, 430;
*Kelly* v. *Bryan*, 6 Ired. Eq. 287, 288; *Stevens* v. *Cooper*,
1 Johns. Ch. 429; *Movan* v. *Hays*, 1 Johns. Ch. 341; *Glisson*
v. *Hill*, 2 Jones' Eq. (N. C.) 259; *Robson* v. *Harwell*, 6 Ga.
589; 2 Story Eq. Jur. § 1531; 1 Perry on Trusts, § 226.

3. Fraud was not in issue in the case.  *Robson* v. *Harwell*,
6 Ga. 589; *Watkins* v. *Stockett*, 6 Har. & J. 445.

4. The answer denying the alleged trust, and no fraud ap-
pearing, the trust cannot be established by parol evidence.
1 Perry on Trusts, § 226; *Leman* v. *Whitley*, 4 Russ. 423;
*Irnham* v. *Child*, 1 Bro. Ch. 92.

5. The bill avers that the deed to Klein was intended to
operate as a mortgage; but it neither offers to redeem, nor
prays an account; and no account was taken.  The purpose
and prayer of the bill is to cancel the two deeds as clouds on
the title of the complainant.  In such a case, no relief can be
granted. *Hoopes* v. *Bailey*, 28 Miss. 328.

II. The alleged trusts are denied by the answers of Klein
and of Mrs. Willis, and are disproved by the depositions of
Butts and Klein.

1. Speaking only from hearsay, Mrs. McNamara cannot, by
any form of positive assertion, give the force of evidence to her

sworn statements, whether in bill or deposition. *Clark* v. *Van Riemsdyk*, 9 Cranch, 160, 161. Even the latitudinarian courts will not enforce a secret trust on parol evidence, " unless it is exceedingly clear and certain, and uncontradicted by other evidence." 1 Perry on Trusts, § 226.

2. It is urged that McNamara and wife understood that these deeds were to be treated as mortgages; but it is not enough that the party on one side intended the deed to operate as a mortgage. Both parties must so intend and agree, and the understanding must have been mutual. *Holmes* v. *Fresh*, 9 Mo. 209, 210 ; *Phœnix* v. *Gardner*, 13 Minn. 433 ; *Belote* v. *Morrison*, 8 Minn. 92, 93.

3. None of the transactions between the McNamaras and Butts, or Mrs. Willis, subsequent to the deed to her, can be used against Klein, for he was ignorant of them all.

4. If a deed in its inception is absolute, no subsequent event can convert it into a mortgage. *Kearney* v. *Macomb*, 16 N. J. Ch. 194.

5. In such cases, the fact that the deed recites a consideration, larger or smaller than was given or agreed upon, is immaterial. It does not tend to prove whether a sale or a mortgage was intended. *Thomas* v. *McCormack*, 9 Dana, 110.

III. If this transaction shall be held to be a mortgage, and this bill be held to be, contrary to its plain import, a bill to redeem, then an account should be taken of the whole amount paid by Klein, with interest. His advances, whether as purchaser or lender, were all made in good faith and upon the property.

It is vain to cite cases on dealings with the property of married women. Mrs. McNamara had already conveyed to Mrs. Willis in due form of law. She had delivered her duly acknowledged, absolute deed, and had thus intrusted her estate to the dealings of her husband, and must abide the result.

*Catchings & Ingersoll*, for the appellee.

That parol testimony is admissible to show that a deed, though absolute on its face, was in fact but a mortgage, has been so uniformly held by the courts, that it is no longer an open question. Wherever it appears that it was the intention of the parties that the deed should have the effect of a mortgage,

the courts will give effect to that intention. They seek to ascertain the true intention of the parties; and in their search they penetrate, freely and fearlessly, all the cloaks and disguises which may have been thrown around the transaction. We need only refer to the very elaborate decision of the Supreme Court of Massachusetts, in the case of *Campbell* v. *Dearborn*, 109 Mass. 130, where the whole doctrine is discussed and explained. The question which meets us at the threshold is whether the deed from the appellee and her husband to Mrs. Willis was intended to operate as a mortgage or not? The intention of Mrs. McNamara is plain, no matter what may have been the intention of Mrs. Willis. She swears distinctly and positively that her only object in executing the deed to Mrs. Willis was to enable her husband, who was financially distressed, to raise money to be used in his business; that her understanding and intention was that the deed was to operate as a mortgage to secure the money to be advanced by Mrs. Willis. That such was the intention and understanding of her husband, B. McNamara, is also plain. E. S. Butts, the only other witness on this point, says " that the purchase was absolute, but he told McNamara that he could repurchase the property in a certain time. He refused to give any obligation to resell whatever, but told him he would have to take the chances of change of mind and circumstances." The only other evidence is to be gathered from the circumstances attending the transaction before, at the time of and after its consummation.

The learned counsel then went into an elaborate discussion of all the circumstances developed by the evidence, contending that they showed that the intention of the parties was to create a mortgage as security for a loan, and not to make either an absolute or a conditional sale, and that Klein took the deed to himself with full notice, the object of said deed being alone to secure the money advanced by him at the time. Klein claims that it was to give him an absolute title to the property. But by his own statements and his subsequent acts he is estopped from setting up such a claim. He admits that he gave McNamara to understand that the property might be redeemed by repaying the $1,875, with interest at one and a half

per cent per month, within a reasonable time.  The price paid by
him was greatly beneath the value of the property.  He says,
however, that at the time he agreed to advance McNamara in
his business, from time to time, other and further sums, up to
what he might think was the value of the property.  Upon
this point he and McNamara differ.  But suppose McNamara
did say that the full value of the property might be paid for in
this way ; still Mrs. McNamara did not agree to it, and never
authorized him to make such an arrangement.  McNamara, at
best, was but her agent.  The principal is only bound for the
acts of the agent within the scope of his authority ; and those
dealing with the agent must see, at their peril, that he is au-
thorized to bind the principal.  McNamara's agency was only
for the purpose of securing some one to pay off Mrs. Willis, to
save the property.  Klein knew this ; for, when McNamara
approached him, by his own admissions, that was his avowed
purpose.  Mrs. McNamara lived in the same city with him.
He knew that all the debt due Mrs. Willis had been paid
but $1,875.  Nothing would have been easier than for him
to see Mrs. McNamara, and ascertain her intentions.  No
price was agreed on for the property.  That in itself is an
important circumstance.  In *Dozier* v. *Freeman*, 47 Miss. 647,
661, the court says, " The law does not favor the divestiture of
the wife's separate property by an implied consent or acqui-
escence."  Indeed, it would seem that, after it is once estab-
lished that this instrument was only to operate as a mortgage
in its inception, its force and effect could not be subsequently
changed by her mere parol consent.  " Once a mortgage, al-
ways a mortgage."  40 Miss. 462 ; 2 Wash. on Real Prop. 520.
*Sellars* v. *Kelly*, 45 Miss. 325, is adverse to the power of the
husband to act for her in the transfer or incumbrance of her
land.

But there are other circumstances which impress conclusively
upon the deed to Klein the character of a mortgage.  The deed
to Klein is but a quitclaim.  This implies a doubtful title in
itself.  *Kerr* v. *Freeman*, 33 Miss. 296.

We respectfully submit that the decision of the court below
was correct, both on the law and facts.  That parol testimony
is admissible to show that an absolute deed is but a mortgage,

is well settled. Applying that principle, the Chancery Court held that the testimony offered showed the whole transaction to have been a mortgage.

If upon a review of the testimony it appears that the Chancellor may have fairly reached the conclusion he did, this court will not set aside the decree. *Davis* v. *Richardson*, 45 Miss. 510; *Apple* v. *Ganong*, 47 Miss. 189; *Partee* v. *Bedford*, 51 Miss. 84.

*T. C. Catchings*, on the same side, made an oral argument.

SIMRALL, C. J., delivered the opinion of the court.

Error is predicated of the decree, on the ground, mainly, that the conveyance by McNamara and wife to Mrs. Bettie B. Willis, and from her to Klein, were sales with a privilege of repurchase, and not mortgages; and, secondly, that the deeds being absolute on their face, parol testimony is inadmissible to show that they were intended merely as securities for McNamara's indebtedness.

There has been much discussion and no little refinement in the books in drawing the distinction between a conditional sale and a mortgage. Assuming, for the present, that extrinsic evidence may be received for the purpose of disclosing whether the parties intended that the deed shall have effect as a security, it becomes necessary to ascertain what the authorities have settled on that point. If there was but a parol agreement to repurchase, under the Statute of Frauds and Perjuries it could not be enforced. It was said, in *Hoopes* v. *Bailey*, 28 Miss. 328, 339, that if the relation of debtor and creditor remains, and the debt still subsists, it is a mortgage; but that, "if the debt be extinguished by the agreement of the parties, . . . and the grantor has the privilege of refunding, . . . it is a conditional sale." The circumstances and negotiations are important factors; whether the proposition was to borrow or loan money; or, if it had relation to a debt, whether it was continued as a subsisting obligation. The form of the contract is not controlling. In *Edrington* v. *Harper*, 3 J. J. Marsh. 353, 355, the court said, "The fact that the real transaction was a borrowing and lending, will, whenever or however it shall appear, show that a deed, absolute on its face, was

intended as a security for money ; " and, when so ascertained, have that effect. The Supreme Court of the United States commits itself to the same doctrine in *Russell* v. *Southard*, 12 How. (U. S.) 139, 151.

The facts which have been indicated by the courts as of almost conclusive weight in determining that the conveyance was intended to be a mortgage and not a sale, are : First, Was the treaty in reference to a borrowing and lending of money, and was the obligation to repay incurred ? Second, Did the relation of creditor and debtor exist before the conveyance, and did that relation continue ? Third, Was there great disparity in the price of the property ? *Russell* v. *Southard, ubi supra ; Eiland* v. *Radford*, 7 Ala. 724 ; *Robertson* v. *Campbell*, 2 Call, 421 ; *Freeman* v. *Wilson*, 51 Miss. 329, 333, 334. The latter case refers to a negotiation for a loan and an actual borrowing, or the continuation of a subsisting debt, and great inadequacy of price, as constraining a court of equity to regard the deed as a security rather than a sale.

In cases of doubt, the court leans in favor of a mortgage rather than a sale. *Russell* v. *Southard, ubi supra ; Flagg* v. *Mann*, 2 Sumner, 486, 533 ; *Poindexter* v. *McCannon*, 1 Dev. Eq. 373 ; *Farmer* v. *Grose*, 42 Cal. 169.

In order to give effect to the absolute deed as a mortgage, extrinsic evidence must be resorted to to show the real nature of the transaction and the intention of the parties. That has been allowed in this State, both before and since the revision of 1857. See *Prewett* v. *Dobbs*, 13 S. & M. 431, 440 ; *Anding* v. *Davis*, 38. Miss. 593; *Vasser* v. *Vasser*, 23 Miss. 378 ; *Littlewort* v. *Davis*, 50 Miss. 403 ; *Freeman* v. *Wilson*, 51 Miss. 333, 334.

Question is now made for the first time, that the introduction, in substance, of the seventh section of the English Statute of Frauds into the revision of 1857 has changed the law, and that parol evidence cannot now be received. The provision is the fifth article of the Code of 1857, p. 359, re-enacted in the Code of 1871, § 2896. The language is: " Hereafter all declarations or creations of trust or confidence, of or in any land, shall be made and manifested by writing, signed by the party who declares or creates such trust, or by his last will."

The conversion of the deed without defeasance, by resort to extrinsic evidence, encountered two obstacles.  One was, the rule that parol testimony cannot contradict or vary the written contract; the other was the Statute of Frauds.  Very early in the history of the Chancery Court both difficulties were surmounted by placing the right upon the ground of fraud, one of the primary sources of equity jurisdiction.  As expressed in an early case, *Cotterell* v. *Purchase*, Cas. temp. Tal. 61, 63 : "They who take a conveyance of an estate as a mortgage, without any defeasance, are guilty of a *fraud*."  In *Baker* v. *Wind*, 1 Ves. Sen. 160, the Lord Chancellor denominates the failure to insert the defeasance in the deed an *imposition;* and adds, the mortgagor " was in distress, and therefore turned it (the deed) into the shape of a purchase ; but he still meant it as a security."  In 1859, in *Lincoln* v. *Wright*, 4 De Gex & J. 16, 22, on appeal, speaking on the very point of the admissibility of parol evidence, the learned judge said : " The principle of the court is, that the Statute of Frauds was not made to cover fraud.  If the real agreement in this case was, that as between the plaintiff and Wright the transaction should be a mortgage transaction, it is, in the eye of this court, a *fraud* to insist on the conveyance as being absolute ; and parol evidence must be admissible to prove the fraud." More than a century intervened between the decision of *Cotterell* v. *Purchase* and this case.  They may, therefore, be accepted as stating the ground upon which the English chancellors placed the subject.  They put the case outside of the Statute of Frauds, and relieve because of the fraud.

The same view has been adopted by the Supreme Court of the United States.  *Conway* v. *Alexander*, 7 Cranch, 218, 238 ; *Morris* v. *Nixon*, 1 How. (U. S.) 118, 126.  In *Russell* v. *Southard, ubi supra*, the admissibility of the evidence is placed distinctly on that ground.  Curtis, J., said, that, both on principle and authority, it is clear that extrinsic evidence is admissible ; and that " to insist on what was really a mortgage as a sale, is in equity a fraud."  An examination into the books of American Reports will show that the same doctrine has been generally, if not universally, received and applied, notwithstanding the Statute of Frauds.  Such statutes exist in quite

all the States. When the Court of Chancery announces that it will treat the transaction, intended as a mortgage but having the shape of an absolute conveyance, if insisted upon in the latter character, as a " fraud," then the door is at once opened to let in proof of its real character.

Whenever and wherever (so far as our research has extended) the statute has been interposed as a bar to the admission of extrinsic evidence, the answer has been that the statute does not apply. The reasoning of the courts has not always been harmonious, and in some instances not satisfactory. The doctrine is too firmly established and uniformly acquiesced in to be now overturned, however much individual judges and courts may regret that it had not ceased when these statutes were enacted. Indeed, this precise objection seems but seldom to have been made. It was, however, considered and overruled in *Campbell* v. *Dearborn*, 109 Mass. 130; *Carr* v. *Carr*, 52 N. Y. 251, 258; *Horn* v. *Keteltas*, 46 N. Y. 605, 610; *Moore* v. *Wade*, 8 Kansas, 380, 387; *Sewell* v. *Price*, 32 Ala. 97. In *Sturtevant* v. *Sturtevant*, 20 N. Y. 39, while vindicating the statute as to parol declarations of trust, the court says, that making an absolute conveyance into a mortgage by parol " affords no ground for saying that a *parol* trust can be upheld."

The books abound in cases where the absolute conveyance has been shown by extrinsic evidence to be but a security for a debt. The question raised has only here and there been mooted, — in no instance that we have seen with success. Certainly it has been the professional opinion in this State that the subject is not affected by the Code of 1857. Nineteen years have elapsed since its enactment, and this is the first case in which the question has been raised. Perhaps that which would reconcile the relief which the court administers with the statute, and harmonize all the difficulties which have been suggested, would be to say, that the equity results to the creditor and grantee from the concurrence of circumstances, and that the court, looking through the entire transaction, deduces the equity from them, rather than the mere agreement, as such. We do not think that the objection is well taken.

Turning now to the evidence, we find that Mrs. McNamara, who was the owner of the house and lot, was willing to assist her husband (at the time sorely pressed with debt) in his mercantile business by allowing him to raise money thereon. McNamara applied first to Moss for a loan of $4,000. Moss declined, but referred him to Butts, cashier of the Vicksburg Bank. After taking legal advice, Butts declined to take a mortgage as security, but agreed for Mrs. Willis to let McNamara have $7,500, to be paid to him as needed; all, however, to be refunded in twelve months, with interest at one and a quarter or one and a half per cent per month. McNamara and wife made the deed to Mrs. Willis on the parol understanding that the reconveyance was to be made on repayment of the money. So great was McNamara's strait, that $2,000 was paid to him the day before the deed was executed, under pledge, however, on the pain of forfeiting $500, to make the deed by ten o'clock the next morning. Mrs. Willis continued to advance the money, until the sum reached in full the limit, or nearly so. Mrs. McNamara alleges that Mrs. Willis was repaid all that she advanced her husband before the conveyance to Klein. As evidence of this, a check on the Vicksburg Bank was put in evidence, dated Feb. 1, 1872, for $1,002.50, which reads : " Pay Bettie Willis *balance on house,* $1,002.50," and is signed, " B. McNamara, per Butts." The check was paid. This is an admission by Butts that $1,002.50 was paid as balance on the house. Butts explains the matter by saying that McNamara had in the bank enough money to repurchase the house on that day; but, not having asked to do so, he obtained further credit, to the amount of $1,875, which was subsequently paid by Klein. At this juncture, some ill-feeling having sprung up between Butts and McNamara, Butts insisted that McNamara should find some person to take the property off his hands, or he would never let him have it back. McNamara explained the situation to Klein, who interposed for his relief, paid the $1,875 to the bank, and received a quitclaim deed from Mrs. Willis, which recited the price paid as $1,000. Klein admits that McNamara informed him of his dealings with Mrs. Willis through Butts, her agent, but says that McNamara told him that he owed a balance of

about $2,000, and that he should want other advances in his business.

It can hardly be doubted that Klein took the conveyance from Mrs. Willis as a security for the money he had advanced.. It may be also true that Klein made other loans on the faith of the title to the property.  Mrs. McNamara's consent that the title might be made to Klein, as security for the balance, which her husband owed and which Klein paid, would bind her.  But when that sum was repaid, which actually occurred shortly afterwards, the property was no further and no longer a security for other loans.

There is another aspect in which these dealings and conveyances may be viewed, arising on the proviso to § 1778 of the Code, a literal re-enactment of the same proviso to art. 23, Code 1857, p. 336 : " No conveyance or incumbrance for the separate debts of the husband shall be binding on the wife, beyond the amount of her income."  In the construction of statutes, meaning must be given to each word, so as fully to compass the legislative will.  The object of the proviso was to restrict the effect of the general language of the clause immediately preceding.  The context is, the separate property of the wife " shall not be sold, conveyed, mortgaged, transferred or in any manner incumbered by the husband, unless the wife shall join in the conveyance."  Paraphrasing the sentence into the affirmative form of expression, it would read : " The wife's separate property may be sold, conveyed, mortgaged, &c., by the joint deed of the husband and wife."  The proviso restricts this general power of disposition by denying, to a " conveyance " or " incumbrance " of the wife's property for the husband's debt, any other or greater effect than to bind the income.

The plain policy of the statute is that she may sell her property, and convey, transfer or mortgage it.  But if she pledges it as a security for the separate debt of her husband, whether that pledge is by a conveyance absolute, by mortgage or by deed of trust, it shall only have a limited effect.  The legislative intention is that she shall not, beyond the income, make her property a security for her husband's debt, either by " conveyance or incumbrance ; " that is, by any form of instrument

by which, under the law, a lien or hypothecation can be created. It will be observed that the word " conveyance " is separated by the disjunction " or " from " incumbrance." These words are not used to convey the same idea. Conveyance, being a general word, comprehends the several modes of passing title to real estate. It is defined to be " the transfer of the title of land from one person, or class of persons, to another." 1 Bouv. Law Dic. (12th ed.) 361. Strictly speaking, as we consider mortgages and deeds of trust, they would be included. *Pickett* v. *Buckner*, 45 Miss. 226, 245. But it comprehends, also, the ordinary deed of bargain and sale. We think that it is used in this statute in its general sense. The proviso, then, means that neither by an absolute deed, nor by mortgage or deed of trust, nor in any other mode recognized by law, shall the wife make her separate property security for the husband's debt, except to the extent of the income. As we have seen, an absolute deed may have effect only as a mortgage, and though there be no written defeasance, extrinsic evidence may be let in to prove the purpose. The proviso recognizes that truth, and confines such a conveyance to a disposition of the income. When the statute declares that a " conveyance " of the wife for the husband's debt shall only operate as a " security," it would be impossible to give effect to its meaning and policy, unless evidence *aliunde* was received to show that the particular instrument, though without defeasance, was intended by the parties as a mortgage.

In *Erwin* v. *Hill*, 47 Miss. 675, this court, in vindication of the policy of the statute, went further than is necessary to go in this case. There the wife conveyed her separate real estate in payment of the husband's debt, and the proviso was construed as denying her power to apply her property any further in aid of her husband than to incumber the income ; and the deed was declared to have effect only as a mortgage of the income. Manifestly, if it does not appear on the face of the deed, parol evidence may be received to disclose what the real transaction was. The court distinctly announced, in the case cited, that the wife could not convey the *corpus* of her estate in payment of her husband's debts.

However the truth may be disguised, and in whatsoever form the papers are written, if the real transaction be that the wife meant to place her property as security for her husband, a court of equity will receive whatever aid pertinent testimony can afford to expose the device and to uphold the prohibition and policy of the statute.                    *Decree affirmed.*