PASSMORE HOOPES v. JETHRO B. BAILEY, executor, &c.

Where H. owed I. a certain amount of money, to pay which, H. conveyed to I. certain lands which he (H.) owned, the legal title to which was in a third person; and it was agreed between H. and I. at the time, that H. should have the privilege of redeeming the land, which I. subsequently admitted. H. filed his bill in chancery, alleging that the lands are worth considerably more than the debt he owed I., and that he (H.) has been entirely unable to raise the money to redeem them; and he prays an account of the debt due to I. and a sale of the lands; the proceeds to be applied to the payment of the debt and costs of the suit, and that the surplus be decreed to him (H.). *Held*, that the chancery court properly dismissed the bill.

A mortgagor cannot file a bill to redeem property, without tendering the payment of the debt for which property was mortgaged.

A mortgage is where the relation of debtor and creditor remains, and the debt still subsists. But a conditional sale, is where the debt is extinguished by the agreement of the parties in making the conveyance of property, and the grantor has the privilege of refunding, and entitle himself to a reconveyance thereby. *Held*, that this case is considered as a conditional sale.

In conditional sales, the rule is, that the vendor must comply with the condition upon which his right to a conveyance depends, strictly and precisely, or his right to redeem the property will be lost. If a day is fixed for the performance of the condition, it must be precisely observed, and if no time be fixed, the terms must be complied with in a reasonable time.

ON appeal from the superior court of chancery; Hon. Charles Scott, chancellor.

Passmore Hoopes filed his bill against the executor and the heirs at law of Henry T. Irish, deceased, alleging that in March,

1845, he was indebted to said Irish in the sum of $1,545.85. That to secure the said Irish in the payment of the same, he agreed that he would cause to be conveyed to him certain lands in Washington and Attala counties, belonging to him, Hoopes, but the legal title to which was held by one Shotwell and one Carson; and the said Irish, on his part, agreed that he would only hold said lands as security for the payment of said $1,545.85 and the interest on the same, and that upon the payment thereof he would convey said lands to Hoopes.

That in compliance with his agreement, he, Hoopes, caused said lands to be conveyed to Irish, by Shotwell and Carson, in the months of April and July, 1845. Copies of said deeds filed as Ex. B. and C.

That Irish died in July, 1846, having first made his will, appointing Bailey his executor, and leaving six infant children his heirs at law. That Irish, in his lifetime, and his executor and heirs since his death, have continued and are in the undisturbed possession of said lands.

That said lands are worth largely more than the amount of the debt to Irish's estate, but that owing to misfortunes and reverses in business, Hoopes has been entirely unable to raise the money to redeem them.

The bill then prays that an account may be taken of the amount due to Irish's estate, that the lands may be decreed to be sold, and that after the payment of the debt to Irish, and the costs of this suit, the surplus arising from the sale may be decreed to be paid over to Hoopes.

The usual formal answer was filed for the infant defendants, by their guardian ad litem.

Bailey, the executor, answered, admitting that Hoopes was, in 1845, the owner of the lands in controversy; and also, that he was indebted to Irish, though in what amount he does not know, nor does he admit that said indebtedness had been settled in any way. He admits the execution of the deeds by Shotwell and Carson to Irish. Has no knowledge of the consideration of said deeds, or of the agreement set up in the bill, that they were only to be held as security for the payment of Hoopes' indebtedness to Irish. Avers that Irish, in his life-

28*

time, and respondent, since his death, have paid taxes, &c., on said lands to the amount of $269.60, as per Ex. No. 1, (which is admitted by Hoopes,) and if an account is ordered, claims that sum in addition to the original debt. Demurs to the bill, on the ground that it is not filed for a specific performance of any agreement; that complainant does not offer to pay the amount due by him; and that by his own negligence, and lapse of time, complainant has lost all claim to relief.

The only evidence in the cause, is the deposition of James J. Marye, and two letters from Irish to Hoopes attached to the deposition, as Ex. A. and B.

Marye testifies to different conversations held between him and Irish, in which Irish admitted to him that he had only taken the conveyances to said lands as security for the debt due him by Hoopes, and that Hoopes was to have the privilege of redeeming them by paying said debt.

He also proves the handwriting of letters A. and B. These letters show that Irish only held these lands as security for his debt, and that Hoopes was entitled to redeem them.

On final hearing, the chancellor ordered the bill to be dismissed, from which decree Hoopes has appealed to this court.

*John B. Coleman,* for appellant.

All the allegations of the bill are sustained by the evidence. The land was conveyed to Irish as a mere security for the payment of the debt due to him by Hoopes. The conveyance to Irish was, then, in equity, but a mortgage; and the heirs and representatives of Irish are entitled to nothing more than the satisfaction of the debt.

The following is the language of this court: " The clear and certain intention of the parties to a conveyance, must determine its character. Hence, a deed, absolute on the face of it, will be held to be valid and effectual as a mortgage, if it clearly appear that it was designed by the parties thereto, to operate as a security for the repayment of money. And such intention may be shown by an agreement in the deed, or in a separate instrument cotemporaneously or subsequently executed, or by an agreement resting in parol." *Prewett* v. *Dobbs,* 13 S. & M. R. 440.

The same principle is recognized in the following cases: 10 S. & M. R. 282; Ib. 527; 12 Ib. 314; 1 S. & M. Ch. R. 366; 4 Kent, 141; 9 Wheat. R. 489.

The chancellor dismissed the bill, on the ground that it was a mere technical bill to redeem, and could not be sustained without the payment into court, or tender of the amount due to the mortgagee. In this, the chancellor was in error. It was not a bill to redeem. It was filed to obtain a sale of the mortgaged property, and was based upon two distinct averments: 1st. That the property was worth largely more than the amount due; and, 2d. That, from pecuniary misfortunes, the complainant was unable to raise or tender the redemption money.

The bill, then, surely presents a case calling for the equitable interposition of the chancellor, unless there is some stern and inflexible rule which forbids it. We know of no such rule.

The record shows, and on this point there is and can be no controversy, that Irish took the land as a mere security for the payment of the debt due him by Hoopes, and that the land is worth largely more than the amount of the debt.

Now, we ask, is it consistent with equity, is it conscientious for Irish or his representatives to retain this land in violation of the spirit of the contract between him and Hoopes, and thus to realize a large profit out of the poverty of his unfortunate debtor?

What is Irish, but a trustee for Hoopes? He received the land upon trust that he would only hold it until the amount of his claim against Hoopes was paid. This claim was the foundation of the contract between him and Hoopes, and its payment was the end sought to be attained by the contract. If, then, Irish is paid the full amount of his debt, the contract is performed. Does it matter to Irish from what source he receives this payment? Does he not obtain all his rights by receiving the amount due him out of the sale of the lands, as fully as he would by the payment of that amount to him by Hoopes? Either way, he receives his money, and he loses the land. He has no right to the land, if the money is paid. Hoopes is, in equity, the owner of the land, subject to Irish's right to foreclose this equity and compel a sale for the satisfaction of his debt.

Suppose Hoopes had merely executed a formal mortgage to secure Irish, without putting him into possession, — how would Irish have been obliged to proceed in order to obtain his money or get a valid title to the land? He would have been compelled to file his bill of foreclosure, to have had an account taken of the amount of his debt, to have obtained a decree for its payment by Hoopes, and, on his failure to make such payment, to have had a sale of the land. He would thus have been forced to pursue the identical course which the bill prays he may be ordered to pursue.

Is there any thing inequitable in asking that he may be required to do now what he would have been compelled to do, but for the accidental advantage he has gained by having been put in possession of the property? Will a court of equity allow a man to take an unconscientious advantage of the necessities of another, and by reason of the poverty of that other, to coerce from him, indirectly, double, perhaps treble, the amount that is owing to him?

We submit, that this bill is sustainable upon the broad principles of equity and justice. That it is sustainable upon the ground that Irish was a mere trustee of the land for Hoopes, with no further interest in it than the security it afforded for the payment of his debt, which it is the object of the bill to have paid to the last cent of principal and interest. And that it is sustainable upon the further ground, that Irish is seeking to obtain an unconscientious advantage of Hoopes.

*J. B. Thrasher*, for appellee.

Before Hoopes can come into this court for relief, he should have proved a subsisting indebtedness all the while, by himself to Irish, upon which Irish could have sued him to judgment in a court of law. 8 Paige, Ch. 254. There is no such proof in the case. It will not do to take the account filed, with Hoopes' statements thereto, or his statements in his bill, as evidence thereof, in the shape of admissions against himself, because that would be to allow him to make testimony for himself, and as he alleges that the lands are worth more than the indebtedness, it is to his interest to make the admissions of indebtedness, if that

Hoopes *v.* Bailey.

would help to establish the transaction as a mortgage or a trust. He should, furthermore, have charged and proved by competent evidence, that said deeds, though absolute upon their face, were subject to a defeasance that stamped the transaction to be a mortgage between himself and Irish. There is no such charge in the bill. The only pretence for such defeasance, is the alleged agreement that Irish would only hold the lands as a security for the debt, and that upon payment he would convey to Hoopes or his assigns. And the only proof in support of such agreement is, that Hoopes had the privilege of redeeming the lands upon paying the debt and interest; and this proof rests solely in parol. We deny that under our statute of frauds, such a defeasance of a deed for lands can rest in parol, or be established by parol. See Hutch. Code, 637, art. 1, § 1; and we contend that the agreement is absolutely void. It is not an agreement to be performed within one year from the making thereof, but to be performed at any time. In fact, according to the proof, it is no agreement at all, but a mere privilege of repurchase, which has long since been forfeited by laches. 8 Paige, Ch. R. 254. But as an agreement, it would be one for the conveyance of lands, and would come fully within the statute of frauds. See 2 Story, Eq. Jur. § 752–758, 764, 767.

The answer does not admit, but demurs to the bill, and whenever the demurrer is insisted upon, the court will dismiss the bill. 2 Story, Eq. § 755–758.

Irish holds the lands by absolute deeds, and possession and enjoyment thereof have followed ever since. The only instances in which parol evidence is admissible to impair a deed which is absolute on its face, by showing that it was intended as a mortgage, is when there has been a contract that such a defeasance should be reduced to writing, and by fraud, accident, or mistake, the writing has not been executed. *Watkins* v. *Stockett*, 6 Har. & McHen. 435; *Lloyd* v. *Ingliss*, 1 Dess. 333; *Dickerson* v. *Dickerson*, 1 Car. Law Repos. 262; *McTeer* v. *Sheppard*, 1 Bay, 461; *Fitzpatrick* v. *Smith*, 1 Dess. 341; *Strator* v. *Jones*, 1 Murph. 449; 13 Mass. 443; *Marsh* v. *Pell*, 1 Johns. Ch. R. 594; 1 Pow. on Mort. 121, (note). No such contract is pretended in this case.

We are well aware that in cases of bills of sale of personal property, a defeasance thereof may rest in parol, and that it may be shown by parol, that, although absolute upon their face, they were designed as mortgages; and for this very good reason, that upon the sale of personal property, no writing, sealed or unsealed, is necessary to pass title to the vendee. The sale and title of personal property can be as well established by parol as by writing under seal. Hence it is no violation of the statute of frauds to prove by parol that an absolute bill of sale, under seal, was designed by the parties as a mortgage. Our high courts have repeatedly so held; but the case of an absolute deed of lands, has never yet been before them that we are aware of. They have held, in a somewhat analogous case, "that a deposit of all the title deeds, as a security for a debt created at the time the deposit is made, is generally recognized as constituting an equitable mortgage; that such equitable liens have met with very decided opposition in England, though they have been generally sustained; but it is admitted on all hands, that they should not be extended beyond their present limits. Such a mortgage is in direct opposition to the statute of frauds, in regard to which we have said that we will create no exceptions not found in the statute." 10 S. & M. 426.

This case is not "an exception found in the statute." It is not an agreement to be performed within twelve months from the date thereof. Hoopes himself caused the deeds of conveyance to be made. There is, therefore, no case upon which a resulting trust in his favor can be charged, because there was no fraud in the form of the conveyance. They were made precisely as he directed. There was no contract that any defeasance to those deeds should be reduced to writing and signed by Irish. Much less is it charged or shown, that such contract existed, and that its execution was omitted through fraud, accident, or mistake. 2 Story, Eq. Jurisp. § 1018.

To entitle Hoopes to come into court, he should have charged and proved further, that he had paid the debt and interest, or that he had tendered it, and it had been refused, or he should have tendered the debt, interest, and costs in his bill. Does any thing of this kind appear? He says that, owing to reverses in

Hoopes v. Bailey.

business, he has been unable to pay, and is still unable to pay, and that the whole amount is still due, and he does not tender any part of the debt, interest, or costs. He has totally failed to comply with his part of the alleged agreement, and therefore has not done equity. " He who seeks equity, must first do equity." He is, therefore, not entitled to a reconveyance. He is not entitled to redeem the lands, because it is an essential part of a bill to redeem, that it offer in' express terms to pay the amount due with costs, &c. 5 How. 186; 18 Johns. 560; 3 Pow. on Mort. 963.

He is not entitled to maintain a suit for the specific performance of any contract or agreement. Payment of the debt and interest by him, is a condition precedent to his right to a reconveyance. He has not done so, but is in default, and does not come into court with clean hands.

In 2 Story's Eq. Jurisp. § 750, it is stated that "courts of equity will not interfere to decree a specific performance, except in cases when it would be strictly equitable to make such decree. They do not carry into specific execution, every contract. If, in any case, the parties have so dealt with each other in reference to the subject-matter of the contract, that the object of one party is defeated, while the other is at liberty to do as he pleases in relation to that very object, a court of equity will not grant any relief." The bill shows that the dealing in this case has been such that, although, according to the bill, Hoopes owed the money in March, 1845, yet he has not paid or tendered it up to this day, although the privilege of redeeming was urged upon him by the two letters of Irish that are filed, and has not even paid the taxes on the lands, as he admits in exhibit 1 to Bailey's answer, but has left all this matter, expense, and trouble, to Irish and his representatives, all of whom were and are non-residents of this State, and live at a great distance from the lands.

" To entitle a party to a specific performance, he must show that he has been in no default in not having performed the agreement, and that he has taken all proper steps towards the performance on his own part." 2 Story, Eq. Jurisp. § 771.

But this is not a bill for a reconveyance. It is not a bill for

redemption. It is not a bill for specific performance of the alleged agreement. If these are the only remedies to which the complainant can ever be entitled under any circumstances, according to his own statements, it would follow that he must fail in his suit.

What is the suit, then, which he has brought? Upon an alleged agreement, that Irish would only hold the lands as a security for a debt, and that upon the payment thereof would convey the lands to complainant or his assigns, the complainant files this bill, treating but not charging said agreement as amounting to a mortgage, and asking for a decree of sale of the lands, and out of the proceeds of sale that Irish's debts be paid, and that the surplus be paid to complainant. In other words, it is the case of a mortgagor filing a bill of foreclosure against his mortgagee; not seeking redemption, which is the only bill that a mortgagor can file, but praying for foreclosure and sale of the mortgaged estate. It is perfectly clear that such a bill cannot be sustained, when the application is not assented to. 3 Pow. on Mort. 963 (note); 2 Ball & Bea. 555, 562.

Here, Bailey does not admit any thing, requires proof of every thing, and concludes by demurring to the bill; and all the other defendants are infants, who admit nothing, require proof of every thing, and ask that their rights be protected by the court, which is equivalent to a demurrer. This point is fatal to the case.

It is no part of the contract, that a mortgagor may file a bill of foreclosure. The contract is that the mortgagee shall " have and hold " the mortgaged estate until his debt is paid; and he is entitled to possession of the specific pledge, and to retain possession until that is done. He can maintain an action of ejectment against the mortgagor, asserting title to it, and the only mode by which the mortgagor can get him out of possession is to pay the debt and redeem. Pow. on Mort. 963, (note.)

The reason why a mortgagor cannot maintain a suit against his mortgagee for a sale of the pledge is, that the court cannot say that the pledge will sell for a sufficient sum to satisfy the amount due and the costs of the suit. Nor can the mortgagee sell. This court cannot say that these lands will sell for a sufficient sum to pay Hoopes' debt.

Hoopes *v.* Bailey.

Mr. Justice HANDY delivered the opinion of the court.

This was a bill filed in the superior court of chancery by the appellant against the executor and heirs at law of Henry T. Irish, deceased, alleging in substance that in the year 1845, the appellant, being indebted to Irish, in order to secure the debt, caused certain lands belonging to the appellant in this State, the legal title to which was in other persons, to be conveyed, by deeds absolute on their face, to Irish, under an agreement by Irish that he would hold the lands only as a security for the payment of the debt, and upon the payment of it, that he would convey the lands to the appellant; that the lands are worth largely more than the amount of the debt, but that the appellant has been entirely unable to raise the money to redeem them; that Irish died in the year 1846, he, in his lifetime, and his executor since his death, having had possession of the lands.

The bill prays an account of the debt due, and a sale of the lands, and that the proceeds be applied to the payment of the debt and costs of the suit, sufficient to pay the same, and that the surplus be decreed to the appellant.

The answer of the executor denies all knowledge of the amount of indebtedness of the appellant to Irish, and of the consideration of the conveyances to him, or of the alleged agreement to reconvey to the appellant; and claims the benefit of a demurrer to the bill, because it is not a bill for a specific performance of any agreement, nor does it offer to redeem the lands by paying the debt, and that the complainant has lost all claim to relief by his own negligence.

It was proved in behalf of the complainant, that Irish admitted that the complainant had secured the debt to him by the conveyance of the lands, and that the complainant had the privilege of redeeming them. He subsequently, in letters to the complainant, expressed his willingness that the complainant should redeem them, stating that they were valuable, and that he did not wish to speculate on the complainant in the matter.

It appeared also that Irish and his executors had paid the

taxes on the property, and that the complainant was willing that the same should be charged upon it.

On the final hearing, the bill was dismissed; from which decree this appeal was taken.

It is insisted in behalf of the appellant, that the conveyance to Irish must be regarded, in equity, as a mortgage and a mere security for the debt.

Taking the transaction in that view, it is clear that the relief sought in the bill could not be granted, upon well established rules. It is undoubtedly true, that a mortgagor cannot file a bill to redeem without tendering the payment of the debt. And, although in the case of a formal mortgage the mortgagor would have to file his bill to foreclose, yet there is no such necessity in case of an absolute conveyance, which is agreed to be held as a security for the debt. In such case, the deed upon its face conveys a perfect title.

Considering the conveyance in this case as having the force of a mortgage, what must be regarded as the substantial agreement between the parties? It certainly is, that the lands are conveyed to Irish, with the right to the appellant to redeem them by paying the debt for which they are taken; and until that shall be done, that they shall be the property of Irish. If this were not so, the means of payment of the debt which the creditor had agreed to take, might be rendered greatly deficient. If the grantee in the conveyance were compelled to submit to a sale of the property for the payment of the debt, it might turn out upon a sale that it would not bring enough to pay the debt. His situation in such an event would be that he would be deprived of the property which he had agreed to take in satisfaction of the debt and would lose a part of his debt.

It will not do to say, that the bill alleges that the property is worth more than the debt, for that can only be properly ascertained by a sale; and if the proceeds of the sale should be less than the debt and costs, it would then be too late to object that the grantee was entitled to hold the lands until he should be actually paid the amount due him. The lands would be lost to him, and all of his debt which remained unpaid by the proceeds of the sale.

He has, therefore, the right to object when he is required to sell, and to stand upon the terms of his agreement, which were in effect that the lands should be absolutely his property until the money for which they were taken should be actually paid to him. He is not compelled to take the hazard of a sale to realize his money.

This would be the condition of the parties if the case be regarded in the light of an equitable mortgage.

But we consider the transaction rather as a conditional sale than a mortgage. The distinction between a mortgage and a conditional sale has been held to be, that when the relation of debtor and creditor remains, and a debt still subsists, it is a mortgage; but if the debt be extinguished by the agreement of the parties, by the execution of the conveyance, and the grantor has the privilege of refunding, and to entitle himself to a reconveyance thereby, it is a conditional sale. *Slee* v. *Manhattan Co.* 1 Paige, Ch. R. 56; *Conway* v. *Alexander,* 7 Cranch, 237.

Here the debt to Irish was paid and discharged. Hoopes had simply the privilege of refunding the money, and thereby to obtain a reconveyance. Unless he should see proper to refund the money, it is manifest that the indebtedness was extinguished, and the transaction finally settled between the parties.

In conditional sales, the rule is, that the vendor must comply with the condition upon which his right to a reconveyance depends, strictly and precisely, or his right to reclaim the property will be lost. 4 Kent's Comm. 144. If a day be fixed for the performance of the condition, it must be precisely observed; and if no time be fixed, the terms must be complied with in a reasonable time.

This serves to show that the appellant can claim nothing except what is within the strict terms or purview of the agreement; and regarding his right merely as one of redemption, we think it manifest that in no point of view could he claim more than that.

We think that the decree is correct, and it is affirmed.