## WILLIAMS *v*. BUTTS.

[87 South. 145, No. 21557.]

1. MORTGAGES. *When a deed absolute on its face may be shown to be a mortgage stated.*

A deed from A. to B., accompanied by a written agreement on the part of B. to convey to C. on the payment to him by C. of the money paid by B. to A. for the land conveyed, C. being then and thereafter remaining in possession of the land, may be shown to be a mortgage to secure the payment to B. of money advanced by him to C. with which to purchase the land from A.

2. APPEAL AND ERROR. *Questions not presented below will not be considered.*

A question not within the case made by the pleadings in the court below will not be considered by the supreme court on appeal.

3. PAYMENT. *When court may apply payment stated.*

If neither the debtor nor the creditor applies a payment to a particular one of several debts due the creditor by the debtor, the court will do so, but if the intention of the parties in making and receiving the payment can be ascertained with reasonable certainty from all the facts and circumstances of the case, the payment will be applied by the court accordingly.

4. MORTGAGES. *Mortgagee entitled to cancellation on payment of mortgage debt, though owing mortgagee other debts.*

Where a mortgage secures payment of a specific debt, the debtor is entitled to the cancellation thereof on the payment by him of the debt secured, although he may owe the mortgagee other unsecured debts contracted since the execution of the mortgage.

APPEAL from chancery court of Yazoo county.

HON. L. F. EASTERLING, Chancellor.

Suit by Anna Williams against Emily Butts. Decree for defendant, and both parties appeal. Reversed and remanded.

*E. L. Brown,* for appellant.

The contention of opposing counsel was that the instruments drawn were to be considered separately, the one as a deed, disconnected with the other, and the other to be considered as an obligation on the part of Mr. Scarbrough to sell to Anna, and no obligation on her part to buy of him, this contention excluding from consideration all of the evidence, and in fact, denying the well-established proposition that a deed, absolute on its fact may, if the grantor retain possession, be shown to be a mortgage. *Brooks* v. *Kelly,* 63 Miss. ——.

This case disposes of the point to be based upon any consideration of whether or not Anna was the owner of the lands when Mr. Campbell deeded the same to Mr. Scarbrough, and this is independent of the consideration which we submitted at the argument, that Mr. Campbell held the lands in trust for Anna. *Thomas* v. *Holmes County,*

67 Miss. 754. If there could be any doubt as to whether this instrument was a mortgage, in the case of *Klein* v. *Mc-Namar,* 54 Miss. 102, it is said: "The books abound in cases where the absolute conveyance has been shown by extrinsic evidence to be but a security for a debt. The question raised has only here and there been mooted in no instance that we have seen with success." *Washington* v. *Soria,* 73 Miss. 665.

Application of Payments. In this case, there was no application of the payments made by Scarbrough himself, that is to say, by the creditor. In *Poindexter* v. *LaRoche,* 7 S. & M. 699, the supreme court held: "If a party be indebted by mortgage, and also by simple contract debts, to the same creditor, and make a payment, and omit to apply it specifically to one of the debts, the law will make the application in the way most beneficial to the debtor, namely first to the mortgage."

So, the record being otherwise silent as to how Mr. Scarbrought appropriated these payments, and absolutely silent as to how Mr. Anna (?) directed that they be applied, the law applied them to the secured debt.

Contrary to what was asserted by opposing counsel at the argument, the civil law rule does not prevail in this state, as held in *McLaughlin* v. *Green,* 48 Miss. 175, which rule is that the payments are to be appropriated most beneficially to the debtor.

In *Mortimer* v. *McCabe,* an unreported case, but reported in 1 Miss. Dec. 595, it is held: "Where a credit upon an open account is not applied by either party, the law appropriates it to the oldest items."

In the case of *Fletcher* v. *Gillman,* 62 Miss. 8, some of the items of the open account were barred, and some were not, and there were credits on the account, the statute of limitations being pleaded on the balance due. The chancellor applied the credits to the latest items of the account, and thus extinguished the whole of it. Of this action of the chancellor the court said: "This was erroneous. The credit was not dated, and there was no parol proof in

the case, nor is there anything to denote any appropriation of the credit by either party. Where a payment is made upon an account without any application of it, the law applies it to the first items in the account." This case, involving one exactly like it, is cited with approval in *Duffey* v. *Kilroe,* 116 Miss. 11.

On the point that when credits are made generally on an account and neither the debtor nor creditors applies them to any specific items of the account, the law will apply them to the first items of the account. See *Fletcher* v. *Gillum,* 62 Miss. 8; *Mortimer* v. *Kay,* Miss. Decision, page 587; *Duffey* v. *Kilroe,* 116 Miss. 7. These authorities settle without a doubt that when payments are made and credited on account generally, no specific application being made by either party, that the law will apply the credit to the first items of the account in their order.

Under the law and undisputed facts, as shown by the book of C. C. Scarbrough, the complainant is entitled to the remedy prayed for, to-wit: To have a commissioner appointed to convey to her the lands mentioned in complainant's bill.

The decree of the chancellor, making Anna Williams, appellant, pay the unsecured account of C. C. Scarbrough, as a condition precedent to the satisfaction of the equitable mortgage, is not only contrary to the law and evidence, but is totally outside of the pleadings, and not authorized by the pleadings. So much of the decree of the chancellor that finds that appellant owed anything under the equitable mortgage must be reversed, and a decree entered by this court that appellant is the owner of the land in controversy, and direct that a deed be made to appellant of the same.

*Campbell & Campbell* and *Mayes & Potter,* for appellants.

The court correctly determined the deed from Mr. Campbell to Mr. Scarbrough, while absolute on its face, was in

fact a mortgage. Before the matter was affected by legislation the unrestricted doctrine prevailed in this state that a deed absolute on its face could be shown to be only a mortgage. This rule was modified by paragraph 1299, Code of 1880, paragraph 4233, Code of 1892, section 4783, Code of 1906, which is as follows: "A conveyance or other writing absolute on its face where the maker parts with the possession of the property conveyed by it, shall not be proved, at the instance of any of the parties, by parol evidence, to be a mortgage only useless fraud in its procurement be the issue to be tried."

In this case the uncontradicted evidence shows that the appellant did not part with the possession of the property; that she was in possession at the time of the execution of the deed; that she is still in possession.

We, therefore, submit that it was competent to show by parol evidence that a mortgage was in fact given and that the deed executed by Mr. Campbell to Mr. Scarbrough, while in form absolute, was in fact a mortgage to secure the debt owed by the appellant to the appellee.

We still refer the court to Annotations in the case of *Johnson* v. *First National Bank of Commerce,* L. R. A. 1916B, page 136. We refer the court to the following cases from other states: *Carr* v. *Carr* (1873), 52 N. Y. 251; *Stinchfoeld* v. *Millikin* (1880), 71 Me. 567; *Phelan* v. *Fitz-Patrick* (1893), 84 Wis. 240, 54 N. W. 614 (1886); 66 Wis. 579; citing *Scribner* v. *Le Clair; Fisk* v. *Stewart* (1877), 24 Minn. 97 (Syl. of court); *Beebe* v. *Wisconsin Mortg. Loan Co.* (1903), 117 Wis. 328, 92 N. W. 1103; *Hall* v. *O'Connell* (1908), 52 Or. 164, 95 Pac. 717, 96 Pac. 1070; *Sweet* v. *Mitchell* (1862), 15 Wis. 642; *Brooks* v. *Kelly,* 63 Miss. 616.

It will not be necessary to multiply authority showing that parol evidence is admissible to prove that a deed absolute on its face can be shown to be a mortgage. In this case the uncontradicted proof shows that the instrument in question, while on its face an absolute deed in form, was by the verbal agreement of the parties a mortgage.

It is the established rule that as in this case where neither party has applied the credits, that they will be applied to the oldest debt. This rule is not only universal, but it is the law in our own state. "Where a payment is made upon an account without any application of it, the law applies it to the first items in the account. Here, therefore, in the absence of any proof the credit should have been applied to the first item of the account and this would have left the last item unbarred and unpaid." *Fletcher* v. *Gillan,* 62 Miss. 8, citing under sub-sec. 4, 30 Cyc., page 1243.

To the same effect is the case of *Mortimer* v. *Kay,* 1 Miss. Decision, page 587, and *Duffery* v. *Kilroe,* 116 Miss. 7. This rule is so well established by elementary law that we feel that it was hardly necessary to cite authority in support thereof. There is another rule on the application of payments as well settled as the rule that creditors are to be applied to the oldest items first, and that is that where there is no application of payments that the payments will be applied most beneficially to the debtor, and therefore, to the unsecured claims in preference to the secured claims.

So far as this record shows, the only secured claim was the items charged to the appellant for the purchase money of the property, and for the expenses of same. If this rule is applied the appellant paid for the land the first year.

The decree of the chancellor should be affirmed in so far as he held that the deed from Mr. Campbell to Mr. Scarbrough, while on its face a deed absolute, was in fact only a mortgage, and the case should be reversed and judgment here for appellant in so far as the decree of the court charging her property with a lien for the balance due on account is concerned, and a decree here rendered requiring the appellee to make a deed and providing for a commissioner in the case that she refuses.

*Barbour & Henry* and *Anderson, Vollor & Kelly,* for appellee.

As stated at the beginning of this brief, the difference between a mortgage and a conditional sale is that a mortgage is a security for a debt which the grantor or mortgagor remains under a legal obligation to pay, and, where ever no such obligation exists, an agreement to reconvey will not be a mortgage, but a mere privilege to repurchase. For this transaction between · Anna Williams and Mr. Scarbrough to have been a mortgage the relation of creditor and debtor must have necessarily existed. It must, therefore, be true that Anna Williams was legally indebted to C. C Scarbrough in the amount mentioned in the deed and the paper called by them a defeasance which she was legally liable to pay and which payment he could legally enforce. If there was no such obligation on her part to pay this money to him and if he didn't have the legal or equitable right to enforce such payment, then the transaction was not a mortgage, but a mere privilege granted to Anna Williams to repurchase said property. If she refused to repurchase, which she had a right to do, then Scarbrough had no power to force her either to repurchase or to pay the amount of money he was out. If she desired she could, within a reasonable time, pay the money and demand from him a deed, but this was purely voluntary and optional on her part. This is held to be the rule by all the best authorities of this country, including the supreme court of our own state and of the United States. *Magee* v. *Catching,* 4 George, or 33 Miss. 672; *Conway* v. *Alexander,* 7 Cranch. (U. S.) 218; 3 L. Ed. 321.

We might add that in the instant case much stronger proof would be required than has been produced. *Wallace* v. *Johnston,* 129 U. S. 58; 32 L. Ed. 619; 14 Rose's Notes, page 556-557; Revised Edition, in 27 Cyc., pp. 1003-1004; 19 R. C. L., page 266, sec. 35.

1. Want of covenant to repay the money is a circumstance that a conditional sale, not a mortgage, was intended. 2. A necessary ingredient in mortgage that mortgagee should have remedy against person of debtor, otherwise it is a conditional sale, p. 523. 3. Existence of debt

is circumstance in determining whether a transaction is absolute sale or mortgage. If there is a debt, it may be a mortgage; if there is none, it must be a sale. P. 526. An examination of the authorities under these different headings will throw much light upon the proper solution of this question. It will be noticed, however, that unless the vendee or grantee has a remedy against the person of the debtor for the recovery of the sum, it is a sale.

Application of Payments. Another proposition advanced by counsel for complainant is the application of payments. Mr. Brown in his brief claims that we denied that the civil law rule as to the application of payments obtains in this state. In that he is mistaken entirely, because it is primary law that the civil law itself applies in such cases. The rule is that the debtor has the first right to direct the application of payments made by him on his indebtedness; that if he does not do so, the creditor has the right to make the application, and if neither does so, then the law will apply the payments most beneficially to the debtor.

As stated in a former part of this brief, we do not propose, because we do not think it is necessary for us to do so, to attempt to review the authorities offered and cited by Mr. Brown in support of his contention that this transaction was a mortgage. We think our own court, on facts very similar to those in this case, has absolutely settled the proposition. He has found and cited no case having facts at all like those under discussion. In addition to our own court upon that proposition, we are backed up by that of the supreme court of the United States, holding absolutely to the same doctrine. The early cases of our own court have never been disturbed in the least. In fact, the argument made by Judge WILEY P. HARRIS, in whose favor the *Magee case*, 33 Miss., *supra*, was decided, it seems to us is absolutely unanswerable, and we would respectfully ask your honors to carefully read this argument if there is any doubt left in your mind as to the correctness of our position in this case.

While we are convinced that our position is correct and that the transaction between Anna Williams and Mr. C. C. Scarbrough was not a mortgage, yet had not the appeal been taken by her, we should have acquiesced in the findings and decree of the chancellor, mainly because the amount involved is necessarily small, the land not being worth much as hill land, and also because we are anxious to get the case settled. Inasmuch, however, as the case is before this honorable court we want to call the court's attention especially to the fact that the chancellor was wrong in knocking out what he calls the usurious interest, especially as to the amount of the two hundred seven dollars and eighty-nine cents which Anna Williams, in writing, agreed to pay Mr. Scarbrough in addition to the expenses mentioned for the purchase of the land from him. In this paper she agreed in writing, to pay ten per cent interest. The proof shows that no part of this land debt was ever paid, and that the ten per cent interest was a legal charge under the law. However, the court struck that out also as being usurious, and if the transaction is to be considered a mortgage, then of course, we are entitled to charge and recover in this proceeding the ten per cent on this sum from the time the transaction was first entered into. We do not believe that any of the authorities cited by counsel for the opposition have any material bearing on the facts of this particular case.

We, therefore, respectfully submit the case, asking this honorable court to reverse it and enter a decree here for the appellee and cross-appellant, allowing her all she claims in the premises.

SMITH, C. J., delivered the opinion of the court.

The appellant exhibited an original bill in the court below against the appellee, alleging in substance that on March 30, 1908, she borrowed from C. S. Scarbrough the money with which to purchase certain land to which T. H. Campbell then held the legal title; that by agreement

Campbell executed a deed thereto, absolute on its face, to Scarbrough, but that the deed was, in fact, intended to operate as a mortgage securing the repayment to Scarbrough of money loaned by him to the appellant with which to purchase the land; that the debt secured thereby had been paid, but, if not, the appellee would pay any balance found to be due thereon; and prayed for a reconveyance to her of the land.

The appellee answered the bill denying that the deed was intended to operate as a mortgage, and alleged that Scarbrough purchased the land and agreed to convey it to the appellant on the payment to him of two hundred seven dollars and seventy-nine cents, interest thereon, and the expense incurred by him in making the purchase; that she failed to pay Scarbrough, and thereby forfeited any right she may have had under the agreement.

The case was heard in the court below on bill, answer, and proof, from which it appears that Allen Sims, the father of the appellant, died about the year 1903, seized and possessed of the land in controversy, on which there was a mortgage executed by him to the British-American Mortgage Company, and leaving as his sole heirs the appellant and her brother, D. C. Sims; that a controversy arose between the appellant and her brother relative to the share which each should inherit from their father, and was settled by an agreement that the appellant should receive a four-fifths and D. C. Sims a one-fifth interest therein; that as the appellant was unable to pay her *pro rata* of the note due by her deceased father to the British-American Mortgage Company, she requested W. T. Stevens to purchase it, which he did, and received an assignment thereof from the British-American Mortgage Company pursuant to the following agreement between Stevens and herself:

"It is agreed that as W. T. Stevens has advanced the money to pay the British-American Mortgage Company one-half of the amount due them, that T. H. Campbell agrees to get an assignment from the British-American

Mortgage Company of their claim, and that the property shall be sold out under said deed of trust to the British-American Mortgage Company, and if W. T. Stevens becomes the purchaser of said land, he agrees to sell it to Anna Williams if she desires to purchase the same that he is out (?), including all expenses of the sale, attorney's fees, and the expenses of his coming to Yazoo City, with interest on the money at the rate of ten per cent, per annum, the intention being to make W. T. Stevens whole for the money and expenses that he is out, together with ten percent. interest on the money."

After receiving the assignment of this note and the deed of trust, a trustee appointed by Scarbrough for that purpose, as provided in the deed of trust, sold the land on the 30th day of March, 1908, in accordance with the provisions of the deed of trust.

Neither Stevens nor the appellant appeared at the sale, but T. H. Campbell, who had been acting in the matter as attorney for the appellant, appeared and purchased the land himself for the sum of two hundred dollars, and the trustee executed to him a deed thereto. Campbell's purpose in purchasing the land was to convey a four-fifths interest therein to the appellant when she should pay Stevens the amount due him on the British-American Mortgage Company's note, and a one-fifth interest therein to D. C. Sims; he having paid his *pro rata* of the British-American Mortgage Company's note before its assignment to Stevens. This conveyance to Sims he afterwards made.

A few days after Campbell purchased the land, the appellant came to his office accompanied by S. C. Scarbrough, who stated that "he would take up the agreement with Stevens, and that he wanted to make himself whole and secure his advance of two hundred seven dollars." Campbell then told him that he, "(Campbell) could either convey the property to Anna (the appellant), and she could give him (Scarbrough) a deed of trust back, or he could convey the property direct to him (Scarbrough), and he signed an agreement to reconvey to Anna upon the pay-

ment of the two hundred seven dollars to him," to which Scarbrough replied "that if it was all the same he would prefer that I (Campbell) deed him the property, and let him agree to reconvey it to Anna." Thereupon Campbell conveyed the land to Scarbrough for the sum of two hundred seven dollars and seventy-nine cents, and Scarbrough executed to the appellee a separate written agreement, reciting his purchase of the land from Campbell, and continued as follows:

"Now I do hereby agree that upon the payment to me by Anna Williams of the two hundred seven dollars and seventy-nine cents with ten per cent. interest from date and all expenses incurred by me in and about the purchase of said land from T. H. Campbell, including my expenses to Yazoo City, I hereby agree to reconvey to said Anna Williams said land."

The agreement contains no limitation upon the time within which the appellant must pay Scarbrough the money advanced by him for the purchase of the land, and the explanation given by Campbell, the draftsman of the instruments, of this omission is that—He "(Campbell asked them (the appellant and Scarbrough) in what time Anna was to pay back the two hundred seven dollars, and Mr. Scarbrough said he would give her (the appellant) five years if she wanted it, and Anna spoke up and said, 'No, Mr. Scarbrough, I don't want so long a time. I can pay it back before that.' And Mr. Scarbrough said, 'Just leave that blank, and Anna and I will agree on what time she will pay the two hundred seven dollars.' "

The appellant was living on and farming the land at this time, and continued thereafter so to do, Scarbrough supplying her each year with money and goods with which to make the crops. On March 30, 1908, Scarbrough charged the appellant with two hundred seven dollars "payment on land" and two dollars "expenses," these being two of the items appearing on appellant's general account with Scarbrough for the first year. At the end of the year, on November 25, 1908, this account, which included the

money advanced for the purchase of the land and the money and supplies furnished the appellant with which to make a crop on the land, amounted to five hundred eighty-three dollars and eighty-seven cents, to which Scarbrough added fifty-eight dollars and thirty-five cents as interest, making a total of six hundred forty-two dollars and twenty-two cents. There appears on this account a credit of two hundred fifty-one dollars and ninety-three cents, leaving a balance due on January 12, 1909, when the balance was struck and agreed on by Scarbrough and the appellant, of three hundred eighty-nine dollars and twenty-nine cents, which balance was carried forward into the new account for 1909. The credit on this account was for money obtained from the sale of the crop made by the appellant with the money and supplies advanced to her by Scarbrough for that purpose.

Scarbrough continued to advance the appellant money and supplies with which to make her crops for several years, and she made payments to him out of the proceeds thereof each year, but not sufficient to cover the amount due Scarbrough for the advances so made. The balances due Scarbrough by the appellant, in which were included both the money advanced by him for the purchase of the land and to make the crops, were agreed on by them at the end of each year.

Scarbrough made no advance to the appellant for the year 1913, and the balance due him by the appellant on February 4, 1914, according to his books, was eight hundred thirty-five dollars and sixty-nine cents. In 1914 the appellant paid Scarbrough rent for the place, and after his death, which occurred in 1915, she paid rent to the appellee, Scarbrough's sole heir at law, for the years 1915 and 1916. In 1914 she told W. T. Stevens, a neighbor, that she had given up the place, as she could not pay for it and was renting it.

The only persons who knew the facts and circumstances surrounding the execution by Campbell of the deed to Scarbrough, and of the agreement by Scarbrough with the

124 Miss.—43

appellant, were Scarbrough, the appellant and Campbell. Scarbrough, as hereinbefore stated, is dead. The appellant did not testify, and Campbell's testimony is as hereinbefore set forth.

The court below held the deed from Campbell to Scarbrough to be a mortgage; fixed the amount due Scarbrough on the account against the appellant as it appears from his books, after purging it of usurious interest, which account included both the money advanced for the purchase of the land and with which to make the crops, and decreed that on the payment thereof the land should become the property of the appellant.

From this decree the complainant in the court below prosecutes a direct appeal, and the defendant in the court below a cross-appeal. The appellant and cross-appellee's complaint is that the court below erred: First, in not applying the payments made by the appellant to Scarbrough to the debt due Scarbrough by the appellant for the money advanced her by him with which to purchase the land; and, second, in holding that the appellant must pay the balance due on the advances made by Scarbrough to the appellant with which to make the crops in order to satisfy the mortgage. The complaint of the appellee and cross-appellant is that the court below erred in holding that the deed from Campbell to Scarbrough was intended to operate as a mortgage, and in not holding that it was a deed absolute, with an agreement on the part of scarbrough to sell the property to the appellee on the payment to him of the price agreed on therefor.

It is reasonably certain from Campbell's testimony that the money paid by Scarbrough for the land was understood by the parties to be a loan from Scarbrough to the appellant which she was to repay, and that the deed from Campbell to Scarbrough was intended merely as a security therefor.

The parties themselves evidently considered the transaction as a loan, for Scarbrough, as hereinbefore set forth, charged the appellant's account with the money advanced

by him to purchase the land, and it was included each year in the balance agreed on by them as being due Scarbrough by the appellant.

The case, therefore, comes within the rule and principle of *Brooks* v. *Kelly,* 63 Miss. 616, *Hoopes* v. *Bailey,* 28 Miss. 328, *Wallis' Heirs* v. *Wilson's Heirs,* 34 Miss. 357, *Freeman* v. *Wilson,* 51 Miss. 329, and *Fultz* v. *Peterson,* 78 Miss. 128, 28 So. 829, and the court below committed no error in holding the deed from Campbell to Scarbrough to be in fact a mortgage.

One of the contentions of the appellee and cross-appellant is, conceding that the deed to Scarbrough must be held to be a mortgage, that it appears from the facts and circumstances of the case that the appellant and Scarbrough had a settlement in 1914 in which the appellant relinquished any equity of redemption she may have had in the land. But this question was not presented to the court below by the allegations of the bill or answer, and will not be considered here.

The appellant's principal contention is that the payments made by her to Scarbrough were not applied by the parties themselves to the payment of either the loan made to her of the money with which the land was purchased, or to the supplies furnished her with which to make the crops, and that the court must now apply these payments to the loan made by Scarbrough to the appellant for either of two reasons: First, it is the oldest debt; and, second, is the most burdensome to the debtor; and, if this is done, that debt will be thereby discharged.

If neither the debtor nor the creditor applies a payment to a particular one of several debts due the creditor by the debtor, the court will do so, but if the intention of the parties in making and receiving the payment can be ascertained with reasonable certainty from all the facts and circumstances of the case, the payment will be applied by the court accordingly. *Tayloe* v. *Sandiford,* 7 Wheat. 14, 5 L. Ed. 384; *Adams Express Co.* v. *Black,* 62 Ind 128; *Barrett* v. *Sipp,* 50 Ind. App. 304, 98 N. E. 310; 96 Am.

St. Rep. 58, note; 2 Am. & Eng. Enc. L. (2d.Ed.), 447 et seq.; 30 Cyc. 1240.

Scarbrough had agreed to give the appellant five years within which to repay the money with which the land was purchased. The advances made by him to enable the appellant to farm the land were presumably to be repaid each year out of the crops made therewith, and the money with which the payments were made was in fact obtained from the crops so made. The payments made during the first year amounted to more than the debt due on the land! Five years after the loan was made Scarbrough quit supplying the appellant with money and goods with which to make crops, and she commenced to pay rent on the land. In 1914 the appellant stated to W. T. Stevens that she had given the land up, as she could not pay for it and was renting it, and she thereafter made no claim to the land until two years after Scarbrough's death.

It seems reasonably clear from these circumstances that both Scarbrough and the appellant understood that the payments were to be applied to the account due Scarbrough for advances with which to make the crops. Unless the appellant intended the payments to be so applied, her long delay in asserting her now claimed right to have the mortgage canceled, and the payment by her of rent on the land, is inexplicable, for, if the payments were to be applied first to the debt due on the land, that debt would have been extinguished by the payments made during the first year, and the appellant would then have been entitled to a deed from Scarbrough to the land in December, 1908, more than eight years before she began this suit.

It follows, therefore, that the payments must be applied first to the debt due by the appellant to Scarbrough for advances made by him to her with which to make the crops, and as the amount thereof is greater than the amount of the payments, nothing will be left to be applied to the payment of the money advanced by Scarbrough for the purchase of the land.

The debt secured by the mortgage is only that incurred by the appellant because of the loan to her by Scarbrough of the money with which to purchase the land, with interest thereon, and the expense, if any, incurred by Scarbrough relative thereto as set forth in his agreement to convey the land to the appellant, and does not secure any balance that may be due Scarbrough for money and supplies furnished the appellant with which to make the crops, and the appellant will be entitled to a deed to the land when she shall have paid the debt secured thereby. The court below erred in including in the amount that she must pay before becoming entitled to the deed to the land the balance due Scarbrough for the money advanced to the appellant with which to make the crops, and for the error in so doing the decree will be reversed, and the cause remanded.

*Reversed and remanded.*